STATE v. JAMES CURETON.

(Filed 16 June, 1939.)

1. **Criminal Law § 50: Homicide § 30—Question propounded by court held not to amount to an expression of opinion as to whether fact had been proven.**

In this prosecution for homicide the court asked a witness when defendant shot deceased the last time. *Held:* The question did not amount to an expression of opinion that defendant did the shooting in view of the fact that the witness had just testified that defendant had shot deceased four times and described the circumstances of each shot and then testified that defendant had shot deceased the fifth time, since under these circumstances the question amounted to no more than an inquiry as to the time the fifth shot was fired, and *further* defendant's exception was rendered immaterial by defendant's later admission that he shot deceased.

2. **Homicide § 25—Evidence held sufficient for jury on question of defendant's guilt of first degree murder.**

The State's evidence tended to show that defendant and deceased engaged in an altercation, that deceased then left defendant's home, that defendant stated that he would kill deceased before daylight, that he procured a pistol, went to the house where deceased was some three hours later and shot and killed deceased, who was unarmed and was making no hostile demonstrations at the time. *Held:* The evidence is sufficient to be submitted to the jury on the question of defendant's guilt of murder in the first degree although the evidence was contradicted in material points by defendant's evidence.

3. **Criminal Law § 52b—**

Upon defendant's motion to nonsuit, the evidence must be taken in the light most favorable to the State.

4. **Criminal Law § 41d—**

When defendant goes upon the stand, the State, on cross-examination, may ask him whether he had been indicted for a particular offense or question him as to particular acts impeaching his character, although as to other witnesses the State might ask them questions only as to defendant's general reputation.

5. **Homicide § 27f—Charge on question of self-defense held without error.**

The failure of the court to charge with particularity upon the principles of the right of self-defense in the preliminary portion of the charge defining the various kinds of homicide, lawful and unlawful, is not erroneous when in subsequent portions of the charge the court repeatedly instructs the jury that defendant would have the right to kill in self-defense if it reasonably appeared to him at that time necessary to save himself from death or great bodily harm.

6. **Criminal Law § 41f—Charge as to weight and credibility to be given testimony of witnesses in general held not error.**

The court, in instructing the jury upon the weight and credibility to be given the testimony of witnesses in general, charged that the jury might

consider the witness' manner and interest in the case, if the witness is interested. *Held:* There being no charge that the jury should scrutinize defendant's testimony, the absence of an instruction that if the jury believed defendant's testimony they should give it the same weight as that of any other witness, is not error.

**7. Criminal Law § 53c—Instruction as to burden of proving matters in mitigation when killing with a deadly weapon is admitted, held without error.**

The failure of the court to charge that when an intentional killing with a deadly weapon is admitted or established the defendant may rely upon the State's evidence to mitigate the offense from murder in the second degree to manslaughter, is not error when none of the State's evidence tends to show matters in mitigation and, defendant having admitted the intentional killing with a deadly weapon, an instruction that the burden was upon defendant to establish matters in mitigation to the satisfaction of the jury is correct.

**8. Same: Homicide § 30—**

A charge, in stating defendant's contentions, that the burden was not upon the State to satisfy the jury beyond a reasonable doubt that defendant was guilty of murder in the second degree *is held* not prejudicial in view of the fact that defendant admitted the intentional killing of deceased with a deadly weapon and the fact that, immediately following, the court charged as to the presumptions arising therefrom.

**9. Homicide § 30—**

Error in the charge in regard to the burden of proof upon the question of defendant's guilt of murder in the second degree is rendered harmless by the jury's verdict of guilty of murder in the first degree upon a charge repeatedly and correctly charging the burden of proof upon this degree of homicide.

APPEAL by defendant from *Clement, J.,* at March Term, 1939, of FORSYTH. No error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*Phin Horton, Jr., James M. Little, Jr., J. A. Myatt, and Julian C. Franklin for defendant, appellant.*

SCHENCK, J. The defendant was convicted of murder in the first degree, and from judgment of death appealed to the Supreme Court, assigning errors.

The State's evidence tended to show that on the night of 14 January, 1939, the deceased, Melvin Nesbit, and one Fannie Byrd had been to a party on Underwood Avenue in the city of Winston-Salem, and about 1 o'clock a.m., they went to the house of the defendant, James Cureton, about two or three houses from the party; that the deceased engaged in

a gambling game with the defendant and others at the defendant's house; that about 5 o'clock a.m., deceased and defendant had a quarrel over the amounts claimed by each to be due him; that the quarrel led to a fight in which only minor injuries were inflicted; that the defendant procured his rifle, and deceased left the house; that when defendant learned that the deceased had left the house he stated that he would kill the deceased "before daylight"; that deceased went to the home of Fannie Byrd and was there at 8:30 o'clock a.m., when the defendant entered the house and charged the deceased with having "a knife after me last night," and when the deceased denied having had a knife, the defendant shot the deceased five times with a pistol, from which shots he died about two weeks thereafter; that the deceased was unarmed at the time he was shot by the defendant.

The defendant's evidence, consisting solely of his own testimony, tended to show that in the altercation at his house about 5 o'clock a.m., the deceased cut him and his clothing, and that the defendant went about 8:30 o'clock a.m., to the house of Fannie Byrd, not knowing that the deceased was there, to tell her to tell the deceased that if he did not pay for the clothing he had cut, the defendant was going "to have him up"; that when the defendant entered Fannie Byrd's house he saw the deceased, and charged him with having cut his clothes the preceding night, whereupon the deceased said "I ain't cut you like I am going to cut you" and started at the defendant with his knife drawn, and the defendant shot the deceased in order to protect himself from the deadly assault being made upon him; that the defendant then went and surrendered to the police and told them he had shot the deceased.

The first assignment of error discussed in the appellant's brief is to a question propounded to the witness Fannie Byrd by the court in the following language: "When did he (defendant) shoot him (deceased) the last time," to which the witness replied: "I don't know." *S. v. Oakley,* 210 N. C., 206, and *S. v. Bean,* 211 N. C., 59, are cited to sustain this exception. These authorities are not applicable to this case. The witness had just testified that the defendant had shot the deceased four times, and then shot him the fifth time, and had described where the deceased was and what he was doing when the four shots were fired, and stated "when he (deceased) was going down, James (defendant) reached around and shot him again." The question propounded was tantamount to asking the witness where did you say the defendant shot the deceased the last time, and did not tend to lead the jury to believe that the judge had formed the opinion that the defendant did the shooting. And again, while up to this time the defendant by his plea of not guilty had denied that he was the person who shot the deceased, he later, as witness in his own behalf, admitted that he fired the fatal shots, but

contended he did so in self defense.  So, if there was error in the question propounded, it was rendered harmless by the subsequent admission by the defendant.

The second assignment of error discussed in appellant's brief relate to the denial by the court of his motion for nonsuit as to the charge of murder in the first degree.  We can see no error in this action of the court.  The State's witness testified in effect that the defendant about 5 :30 o'clock a.m., stated that he would kill the deceased "before daylight," that he procured a pistol, went to the house where deceased was, about 8 :30 o'clock a.m., and shot the deceased five times, when the deceased was unarmed and making no hostile demonstrations toward the defendant.  While defendant's version of what took place was different from that of the State's witnesses, on a motion for nonsuit the evidence must be taken in the light most favorable to the State.

The third assignment of error discussed in appellant's brief is to the court's allowing the defendant to be asked on cross-examination whether he had been indicted as an accessory in another killing.  The rule is: "The party himself, when he goes upon the witness stand, can be asked questions as to particular acts impeaching his character, but as to other witnesses it is only competent to ask the witness if he knows the general character of the party."  *S. v. Sims,* 213 N. C., 590.

The fourth assignment of error discussed in the appellant's brief is to a clause in the charge of the court as follows: "Excusable homicide occurs when a person kills another in defense of himself or his family, kills in self defense or where he kills another by accident or misadventure, or where an insane person kills another."  The appellant complains that the court failed to instruct the jury "that where the defendant reasonably deems himself in danger of great bodily harm by another, he is justified in using whatever force is necessary, even to killing his adversary to repel an attack."  While it is true that at the time the portion of the charge assailed was given the court did not charge the jury that the defendant would have the right to use such force as reasonably seemed necessary to him at the time to prevent death or great bodily harm, the court did repeatedly, at least three or four times, so charge the jury.  The clause assailed was used at the outset of the charge when the court was instructing the jury as to the various kinds of homicide, both lawful and unlawful, and it was not at that time incumbent upon the court to go into the principles of the right to self defense with any great particularity.  In this assignment we find no error.

The fifth assignment of error discussed in appellant's brief is to a clause in the charge reading: "Take into consideration what the witness says and how he says it, the witness' interest in the case, if the witness

is interested in it." This clause can only be understood when taken in connection with what preceded and followed it. The court charged: "You may believe all a witness says, or you may believe part a witness says, or you may believe nothing a witness says. You are the sole judges of the weight you give to the testimony of any witness that goes upon the witness stand. Take into consideration what a witness says and how he says it, the witness' interest in the case if the witness is interested in it. Take into consideration the witness' opportunity to know what he is talking about. After doing that, you decide on what weight you will give the testimony of any witness that goes upon the witness stand." This is not an instruction singling out any witness as interested, and then instructing the jury as to how such witness' testimony should be considered. If such was the case the exception by the defendant would have merit. There was no instruction to scrutinize the testimony of the defendant in the light of his interest in the result of the verdict. The instruction given had general application to all witnesses in the case, and did not require the further instruction that if the jury believed the testimony of an interested witness they would give to such testimony the same weight as that given to the testimony of disinterested witnesses. We see no error in the instruction complained of.

The sixth assignment of error discussed in the appellant's brief relates to the court's failure to instruct the jury that when it is admitted or proven that the defendant slew the deceased with a deadly weapon the defendant could rely upon the State's evidence to mitigate the offense from murder in the second degree to manslaughter, or excuse it on the ground of self defense, and to the instruction to the effect that the burden was upon the defendant to produce evidence to satisfy the jury of matters and things in mitigation and excuse. These assignments call for serious thought, but in the light of the facts of this case we are of the opinion, and so hold, they cannot be sustained for the reason that there is in the State's evidence nothing tending to show mitigation or excuse. The State's evidence all tends to show that the defendant, after making threats to kill the deceased, procured a pistol, sought out the deceased and shot him to death, while unarmed and helpless. Hence, since the defendant admitted the intentional killing with a deadly weapon, it was incumbent upon him, if he would reduce the homicide from murder in the second degree, to produce evidence to satisfy the jury of matters and things in mitigation. *Adams, J.,* in speaking to a similar situation in *S. v. Wallace,* 203 N. C., 284, 289, says: "It is true that a person on trial for a crime of this character may rely on the State's evidence to show matters in mitigation or excuse. But as the State offered no such evidence there was no error in the instruction that

it was incumbent upon the defendant to establish such matters to the satisfaction of the jury." There was no prejudicial error in the charge assailed by these assignments.

The seventh assignment of error discussed in the appellant's brief relates to a clause in the charge which reads: "Then the burden is not on the State to satisfy you beyond a reasonable doubt he is guilty of murder in the second degree." The court was presenting the contentions of the defendant and charged the jury: "He (the defendant) contends when you consider all of the evidence you should not so find and you should not convict him of that offense (murder in the first degree). Then, the burden is not on the State to satisfy you beyond a reasonable doubt he is guilty of murder in the second degree. He having admitted that he slew the deceased with a pistol, nothing else appearing, then the presumption of law is he is guilty of murder in the second degree." While the statement that the "burden is not on the State to satisfy you beyond a reasonable doubt he is guilty of murder in the second degree" may not be an accurate statement of the law, in view of the defendant's admission that he intentionally slew the deceased with a deadly weapon, any error in the charge was harmless, since upon such admission, as stated by the court, "the presumption of law is he is guilty of murder in the second degree." Likewise, "as the prisoner was convicted of the greater offense of murder in the first degree, this exception is not material." S. v. Johnson, 161 N. C., 264. The evidence was amply sufficient to sustain the verdict and there is no exception to the charge in so far as it relates to the crime of murder in the first degree of which the defendant was convicted. Throughout the charge the court consistently and repeatedly placed the burden upon the State to establish each element of the offense of murder in the first degree beyond a reasonable doubt. We see no prejudicial error in the portion of the charge assailed by this assignment.

The remaining assignments of error discussed in appellant's brief are to the denial of a new trial and to the judgment entered. These assignments are disposed of by our holdings upon the other assignments discussed.

We have given each assignment of error discussed in the appellant's brief the careful consideration that the gravity of the case demands, and we find in the record

No error.