STATE OF NORTH CAROLINA v. ROGER BLACKSTOCK

No. 638A84

(Filed 13 August 1985)

**1. Criminal Law § 99.2— question by trial judge—no expression of opinion**

The trial judge's question as to whether certain marks shown in a photograph were on the victim's neck "prior to the Defendant placing his hand around your throat" did not constitute a prejudicial expression of opinion that

State v. Blackstock

defendant was the assailant where the victim had testified at length as to defendant's identity based on her prior acquaintance with him and her opportunity to observe him during the crimes, the victim had picked defendant's picture out of a photographic lineup shortly after the crimes occurred, and the victim had clearly testified that it was defendant who placed his hands around her neck and choked her.

**2. Rape and Allied Offenses § 1— first degree rape—first degree sexual offense—serious bodily injury—change of former statute**

In enacting the current first degree rape statute, G.S. 14-27.2, and the first degree sexual offense statute, G.S. 14-27.4, the legislature intended to change the substance of former G.S. 14-21 to the end that the element of "infliction of serious bodily injury" would no longer be limited to the period of time when the victim's resistance was being overcome or her submission procured, nor would the infliction of serious personal injury be limited to the person who was the victim of the rape or the first degree sexual offense.

**3. Rape and Allied Offenses § 1— first degree rape—first degree sexual offense—serious personal injury—when applicable**

The element of infliction of serious personal injury upon the victim or another person in the crimes of first degree sexual offense and first degree rape is sufficiently connected in time to the sexual acts when there is a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury. Such incidents include injury inflicted on the victim to overcome resistance or to obtain submission, injury inflicted upon the victim or another in an attempt to commit the crimes or in furtherance of the crimes of rape or sexual offense, or injury inflicted upon the victim or another for the purpose of concealing the crimes or to aid in the assailant's escape.

**4. Criminal Law §§ 98.1, 128.2— emotional outburst by victim—failure to declare mistrial or give curative instruction**

In a prosecution for first degree rape, first degree sexual offense, assault with a deadly weapon with intent to kill, and common law robbery, the trial court did not abuse its discretion in refusing to grant a mistrial when the victim had an emotional outburst during the jury instructions in light of the court's prompt action in having the victim removed from the courtroom and the otherwise compelling case against defendant. Nor did the trial court err in failing to give a curative instruction with regard to the victim's outburst absent a request by defendant for such an instruction.

APPEAL by defendant from *Martin, J.*, at the 16 July 1984 Criminal Session of GUILFORD County Superior Court.

The evidence at trial tended to show that on the evening of 12 December 1983 Cynthia Simmons was at her Greensboro home with her five-year-old son. Ms. Simmons heard a knock at her door, looked out a window and saw a man she identified as defendant. She testified that she recognized defendant at the time

as a man who had been in her home on several previous occasions to install and repair appliances. On the evening in question defendant told Ms. Simmons that his truck had broken down while he was in the neighborhood repairing appliances and asked to use her telephone. Ms. Simmons admitted defendant and he briefly used her phone. After completing a call he told Ms. Simmons that someone was coming to pick him up. Ms. Simmons put her son to bed, and then went to her kitchen to make a cup of tea. At that time defendant approached Ms. Simmons from behind, placed his hands over her nose and mouth, and dragged her into the living room. After telling her that he had a gun in his jacket pocket and that he meant business, he instructed Ms. Simmons to remove her clothes and to lie down on the living room floor. He then had sexual intercourse with her and forced her to commit oral sex. After moving her to a couch in the living room, defendant had forcible sexual intercourse with her a second time.

Defendant then instructed Ms. Simmons to put her clothes back on and asked whether she had money in the house. She and defendant went to a bedroom where she gave him a wallet and money. Ms. Simmons testified that defendant continued to keep his hand in his pocket and that she continued to believe that he was armed. They returned to the living room and defendant took Ms. Simmons' gold necklaces. He told her that he did not know what he was going to do with her but that he was going to have to do something because he knew that she would tell on him. The two then heard a knock on the door and defendant instructed Ms. Simmons to answer it and to refrain from doing anything that would give him away. Defendant put his hand back in his pocket and reminded Ms. Simmons that he had a gun. She went to the door and spoke for a while to a neighbor's child who was delivering a package that the United Parcel Service had left with his family. When the child left, Ms. Simmons returned to sit on the living room couch and defendant again asked Ms. Simmons if she was going to tell. Defendant then pulled Ms. Simmons up from the couch, put his hands around her neck and choked her until she lost consciousness. When she regained consciousness Ms. Simmons' head was bleeding and she saw a bloodstained piece of wood lying nearby.

After going to a neighbor's house to report the crime, Ms. Simmons was taken to a hospital where she was hospitalized for

eight days. A physician who examined her in the emergency room testified that she had a very severely injured scalp, facial swelling and diffused bleeding. He testified that the wounds would have been life-threatening had she not received medical treatment. Ms. Simmons later re-entered the hospital for reconstructive surgery.

While at the hospital for the first time, Ms. Simmons picked defendant's picture out of a photographic lineup as the man who attacked her on 12 December. Other evidence at trial tended to show that semen found on the victim's clothing was consistent with that of the blood grouping of defendant. The neighbor child who delivered the package to the prosecuting witness testified that defendant was the man he saw in Ms. Simmons' living room on the night of the attack.

Defendant testified that he was at his home or was jogging at the time of the incident.

The jury found defendant guilty of first degree rape, first degree sexual offense, assault with a deadly weapon with intent to kill, inflicting serious bodily injury and common law robbery. The trial judge sentenced defendant to imprisonment for two consecutive life terms for the rape and sexual offense convictions, twenty years for the assault conviction, and ten years for the robbery, the ten-year and twenty-year sentences to run concurrently with the life terms. Defendant appealed pursuant to N.C.G.S. § 7A-27(a). We allowed his motion to bypass the Court of Appeals on the assault and robbery convictions on 23 January 1985.

*Lacy H. Thornburg, Attorney General, by Walter M. Smith, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

[1] By his first assignment of error defendant contends that the trial judge committed prejudicial error in questioning the prosecuting witness by intimating an opinion as to the controverted fact of the assailant's identity. Ms. Simmons, the prosecuting witness, was testifying concerning a photograph showing injuries to her neck and face when the following exchange occurred:

THE COURT: Were those marks on your neck prior to the Defendant placing his hand around your throat?

THE WITNESS: No, they were not.

It is well established by our case law and statutory enactments that it is improper for a trial judge to express in the presence of the jury his opinion upon any issue to be decided by the jury or to indicate in any manner his opinion as to the weight of the evidence or the credibility of any evidence properly before the jury. *See* N.C. Gen. Stat. § 15A-1222 (1983); *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983). Even so, every such impropriety by the trial judge does not result in prejudicial error. Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant. *State v. Brady*, 299 N.C. 547, 264 S.E. 2d 66 (1980); *State v. Greene*, 283 N.C. 482, 206 S.E. 2d 229 (1974). Thus, in a criminal case it is only when the jury may reasonably infer from the evidence before it that the trial judge's action intimated an opinion as to a factual issue, the defendant's guilt, the weight of the evidence or a witness's credibility that prejudicial error results. *State v. Yellorday*, 297 N.C. 574, 256 S.E. 2d 205 (1979). In this connection it is well settled that it is the duty of the trial judge to supervise and control the course of a trial so as to insure justice to all parties. In so doing the court may question a witness in order to clarify confusing or contradictory testimony. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229.

Defendant relies on *State v. Oakley*, 210 N.C. 206, 186 S.E. 244 (1936), to support his position. In *Oakley* a couple testified that shortly after a man had broken into their home, they spotted and pointed out to law enforcement officers tracks in fresh snow leading away from their home. Thereafter, when an officer was describing the tracks he found, the trial judge told him he could not testify, at that point, as to who made the tracks. Shortly afterwards, in the course of the same witness's testimony the judge asked, "You tracked the defendant to whose house?" 210 N.C. at 208, 186 S.E. at 246. On appeal this Court found that question to be prejudicial error, noting that the question amounted to an opinion by the trial judge that the State had proven the tracks to be those of the defendant, when in fact, this had not been proven

by the State. In making this decision the Court also noted the circumstantial nature of the State's evidence.

On the other hand the State points to *State v. Cureton*, 215 N.C. 778, 3 S.E. 2d 343 (1939), *overruled on other grounds, State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971), and to *State v. McEachern*, 283 N.C. 57, 194 S.E. 2d 787 (1973), as governing this assignment of error.

In *Cureton* a witness had testified that the defendant shot the victim four times and then testified that the defendant had shot deceased a fifth time. At that point the trial judge asked the witness when the defendant shot the deceased the last time. This Court rejected the defendant's contention that the judge's question amounted to an expression of opinion that the defendant did the shooting, noting that the witness had already testified that the defendant did the shooting and that the judge's question was merely for clarification.

In *McEachern* defendant was charged with rape. Before there was any testimony from the victim that she had been raped the trial judge asked the prosecuting witness, "Let me ask you a question of clarification before you go further, you were in the car when you were raped?" *Id.* at 59, 194 S.E. 2d 789. Finding prejudicial error, the Court reasoned that the trial judge *assumed* that a rape had occurred before it was established by any evidence before the jury. In reaching its conclusion the Court distinguished *Oakley* and *Cureton* in the following manner:

> These two cases are distinguishable. In *Oakley* the court's question expressed an opinion that the tracks were made by defendant. This crucial proof had not been shown by other evidence. In *Cureton* the fact that defendant had shot the deceased was supported by ample evidence, and the judge's question only sought clarification as to when and where the shooting took place. The defendant did not deny that he shot the deceased and in fact later testified that he fired the fatal shots, but that he did so in self defense.

283 N.C. at 61, 194 S.E. 2d at 790.

In the instant case Ms. Simmons had testified at length as to defendant's identity, stating that she had previously known him and relating that she was in his presence for a long period of time

under conditions which permitted her to see defendant clearly. She picked defendant's picture out of a photographic lineup shortly after the crime occurred, and had clearly testified that it was defendant who placed his hands around her neck and choked her.

We do not believe that a juror could reasonably infer that the judge's question amounted to an expression of an opinion as to defendant's guilt or innocence or as to any issue to be decided by the jury or as to the weight of the evidence or the credibility of the witness. Obviously the trial judge sought clarification as to whether the marks shown in the photograph were there *before* the alleged assault on the victim. Therefore, under the rationale of *Cureton* and *McEachern*, we hold that the trial judge did not commit prejudicial error by questioning the prosecuting witness about the marks on her neck.

Defendant assigns as error the failure of the trial judge to dismiss the charges of first degree rape and first degree sexual offense. It is his position that there was no evidence before the jury to show that a serious personal injury was inflicted upon the victim during the course of the respective crimes.

The pertinent portions of the rape statute and the sexual offense statute are as follows:

§ 14-27.2.   First-degree rape.

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

. . . .

(2) With another person by force and against the will of the other person, and:

. . . .

b. Inflicts serious personal injury upon the victim or another person. . . .

§ 14-27.4.   First-degree sexual offense.

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

. . . .

(2) With another person by force and against the will of the other person, and:

. . . .

b. Inflicts serious personal injury upon the victim or another person. . . .

The trial judge in the mandate of his instructions to the jury on the charge of first degree rape stated:

So, I charge that if you find from the evidence beyond a reasonable doubt that on or about December the 12th, 1983, that Roger Blackstock engaged in vaginal intercourse with Cynthia Simmons and that he did so by grabbing her, telling her that he had a gun, and by threatening to harm her, and that this was sufficient to overcome any resistance which Cynthia Simmons might make, and that Cynthia Simmons did not consent and that it was against her will, and that the Defendant inflicted a laceration upon Cynthia Simmons' head, and that this was a serious personal injury, it would be your duty to return a verdict of guilty of first degree rape. However, if you do not so find or if you have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of first degree rape.

He also submitted the charge of second degree rape in the same manner except there was no requirement that the State prove beyond a reasonable doubt that defendant inflicted serious personal injuries upon Ms. Simmons.

The trial court also correctly submitted the charges of first degree sexual offense and second degree sexual offense, noting that first degree sexual offense and second degree sexual offense differed only in that the State did not have to prove the infliction of serious personal injury on Ms. Simmons in order to convict on the charge of second degree sexual offense.

Defendant argues that the serious injury relied upon by the State occurred a substantial time after both criminal offenses had terminated and therefore could not be relied upon as an element of first degree rape or first degree sexual offense. This argument presents a question of first impression concerning the statutory

construction of our rape and sexual offense statutes, N.C.G.S. § 14-27.2 and N.C.G.S. § 14-27.4.

The cardinal principle of statutory construction is that the intent of the legislature is controlling. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). Further, in construing a statute with reference to an amendment it is presumed that the legislature intended either to change the substance of the original act or to clarify the meaning of the statute. *Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E. 2d 481 (1968). "Where a statute has been repealed and substantially re-enacted by a statute which contains additions to or changes in the original statute . . . the additions or changes are treated as amendments effective from the time the new statute goes into effect." 73 Am. Jur. 2d *Statutes* § 391 (1974).

In seeking to find the legislature's intent, we find it necessary to examine the language of N.C.G.S. § 14-21 before its repeal and replacement by our current rape statute, N.C.G.S. § 14-27.2 and the first degree sexual offense statute, N.C.G.S. § 14-27.4. *See* Act of May 29, 1979, ch. 682, § 1, 1979 Session Laws 727. Prior to the 1979 enactment of N.C.G.S. § 14-27.2, the pertinent portion of the first degree rape statute provided:

> If the person guilty of rape is more than sixteen years of age, and the rape victim *had her resistance overcome or her submission procured by the use of a deadly weapon, or by the infliction of serious bodily injury to her*, the punishment shall be death.

N.C. Gen. Stat. § 14-21 (repealed 1979) (emphasis added).

Under the present rape statute N.C.G.S. § 14-27.2, one of the elements of first degree rape is proof of the infliction of "serious personal injury upon the victim or another person." N.C. Gen. Stat. § 14-27.2(a)(2)(b) (1981). The same legislature enacted the newly created first degree sexual offense statute in which the identical language concerning the infliction of serious personal injury was inserted as one of the elements of first degree sexual offense. N.C. Gen. Stat. § 14-27.4(a)(2)(b) (1981).

[2] Our examination of the history of these legislative enactments and the actual language of the prior and present statutes leads us quickly to conclude that the legislature intended to

change the substance of former N.C.G.S. § 14-21 to the end that the element of "infliction of serious bodily injury" would no longer be limited to the period of time when the victim's resistance was being overcome or her submission procured. Nor would the infliction of serious personal injury be limited to the person who was the victim of the rape or the first degree sexual offense.

The case of *State v. Sturdivant*, 304 N.C. 293, 283 S.E. 2d 719 (1981), contrasted our previous statute, N.C.G.S. § 14-21, with the present statute, N.C.G.S. § 14-27.2, in considering the use of a deadly weapon in first degree rape. The Court noted that the former statute required the State to prove that the weapon was *used* to overcome the victim's resistance or to procure submission. In contrast the Court held that the current statute requires only a showing that a dangerous or deadly weapon was employed or displayed *in the course of the rape*. Thus, *Sturdivant* stands for the proposition that if a weapon is employed or displayed *in the course of the rape period* it is sufficient to support the verdict of guilty upon a charge of first degree rape.

There remains the question of the time frame in which the serious personal injury must be inflicted in order to be used as an element to support a conviction of first degree rape or first degree sexual offense. We find guidance in the decisions of our Court and other jurisdictions in their considerations of the felony murder rule. This is so because in the crimes under consideration and in first degree murder under the felony murder rule, there must be distinct acts or occurrences within a certain time frame in order to sustain a first degree conviction.

North Carolina General Statute § 14-17 provides in part that a murder "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree. . . ." N.C. Gen. Stat. § 14-17 (1983).

In interpreting this statute we have held that a killing is committed in the perpetration of a felony "when there is *no break in the chain of events leading from the initial felony to the act causing death,* so that the homicide is *linked to or part of the series of incidents, forming one continuous transaction.*" *State v. Thompson,* 280 N.C. 202, 212, 185 S.E. 2d 666, 673 (1972) (quoting

40 Am. Jur. 2d *Homicide*, § 73 (1968) ) (emphasis added). Furthermore, this Court has held that it is immaterial whether the felony occurred prior to or immediately after the killing so long as it is a part of a series of incidents forming one continuous transaction. *State v. Williams*, 308 N.C. 47, 67, 301 S.E. 2d 335, 348, *cert. denied*, --- U.S. ---, 104 S.Ct. 202 (1983).

In a discussion of the Delaware felony murder rule, the Supreme Court of that state has held that it suffices if the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it, or to conceal it. *Parson v. State*, 222 A. 2d 326, 332 (Del. 1966), *cert. denied*, 386 U.S. 935 (1967) (citing 1 Anderson, Wharton's Criminal Law and Procedure § 252).

[3] We conclude that our legislature intended and we therefore hold that the element of infliction of serious personal injury upon the victim or another person in the crimes of first degree sexual offense and first degree rape is sufficiently connected in time to the sexual acts when there is a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury. Such incidents include injury inflicted on the victim to overcome resistance or to obtain submission, injury inflicted upon the victim or another in an attempt to commit the crimes or in furtherance of the crimes of rape or sexual offense, or injury inflicted upon the victim or another for the purpose of concealing the crimes or to aid in the assailant's escape.

In the case before us the serious personal injury inflicted upon the victim was one in a series of incidents in the same criminal episode which occurred before defendant left the home of the victim. The injury was clearly inflicted for the purpose of concealing the assailant's criminal acts or of aiding in his escape.

The trial judge correctly denied defendant's motions to dismiss the charges of first degree rape and first degree sexual offense.

By his next assignment of error, defendant contends that the trial court erred in refusing to instruct the jury that the serious personal injury must be inflicted at the same time as the rape and sexual offenses in order to find the defendant guilty of those

crimes in the first degree. Our disposition of the previous assign-
ment of error answers this issue adversely to defendant. We over-
rule this assignment of error.

[4]  By his final assignment of error, defendant contends that the
trial court erred in failing to grant a mistrial and in taking no
remedial action after the prosecuting witness had an emotional
outburst during the jury instructions. The trial judge noted for
the record that during his summary of the evidence:

> [T]he prosecuting witness, Cynthia Simmons, became hysteri-
> cal; that she made a loud noise in the courtroom and broke
> down and was sobbing; that the Court indicated to the prose-
> cutor to have Ms. Simmons removed from the courtroom; the
> prosecutor, in the company of at least two bailiffs, did have
> Ms. Simmons removed from the courtroom; that she has re-
> mained absent from the courtroom for the rest of the Jury in-
> structions and for the rest of the proceedings to this point in
> the trial.

After the completion of the jury instruction, defendant
moved for a mistrial in the jury's absence. The trial court denied
his motion, stating that "the incident was not of sufficient preju-
dice to defendant to require a mistrial."

North Carolina General Statute § 15A-1061 provides in perti-
nent part that:

> Upon motion of a defendant or with his concurrence the
> judge may declare a mistrial at any time during the trial. The
> judge must declare a mistrial upon the defendant's motion if
> there occurs during the trial an error or legal defect in the
> proceedings, or conduct inside or outside the courtroom, re-
> sulting in substantial and irreparable prejudice to the defend-
> ant's case.

N.C. Gen. Stat. § 15A-1061 (1983).

We have held that whether a motion for mistrial should be
granted is a matter which rests in the sound discretion of the
trial judge. *State v. Calloway*, 305 N.C. 747, 291 S.E. 2d 622 (1982);
*State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976). A mistrial is
appropriate only when there are such serious improprieties as

would make it impossible to attain a fair and impartial verdict under the law. *State v. Calloway*, 305 N.C. 747, 291 S.E. 2d 622.

In *State v. McGuire*, 297 N.C. 69, 254 S.E. 2d 165 (1979), this Court discussed the reason for deferring to a trial judge's determination of these matters.

> When such an incident involving an unexpected emotional outburst occurs, the judge must act promptly and decisively to restore order and to erase any bias or prejudice which may have been aroused. Whether it is possible to accomplish this in a particular case is a question necessarily first addressed to the sound discretion of the trial judge. "Not every disruptive event occurring during the course of trial requires the court automatically to declare a mistrial," and if in the sound discretion of the trial judge it is possible despite the untoward event, to preserve defendant's basic right to receive a fair trial before an unbiased jury, then the motion for mistrial should be denied. On appeal, the decision of the trial judge in this regard is entitled to the greatest respect. He is present while the events unfold and is in a position to know far better than the printed record can ever reflect just how far the jury may have been influenced by the events occurring during the trial and whether it has been possible to erase the prejudicial effect of some emotional outburst. Therefore, unless his ruling is clearly erroneous so as to amount to a manifest abuse of discretion, it will not be disturbed on appeal.

297 N.C. at 75, 254 S.E. 2d at 169-70 (quoting *State v. Sorrells*, 33 N.C. App. 374, 376-77, 235 S.E. 2d 70, 72, *cert. denied*, 293 N.C. 257, 237 S.E. 2d 539 (1977) ) (citations omitted).

We do not believe the trial judge abused his discretion in refusing to grant a mistrial in the case before us. After the witness's initial outburst, the judge demonstrated the inappropriateness of the outburst by promptly directing the removal of the witness and by resuming his instructions to the jury. Furthermore, the evidence against defendant was strong. We conclude that in light of the trial court's prompt actions and the otherwise compelling case against defendant, the witness's emotional outburst was not so prejudicial to defendant as to result in reversible error.

By the same assignment of error, defendant contends that the trial court should have given a curative instruction with regard to the witness's outburst in his charge to the jury. Defendant argues that the judge's failure to give such an instruction "was to send a message to the jury that such activity was part of a normal trial."

We first note that defendant's attorney made no request for a curative instruction or other remedial action with regard to this matter. Our rule has long been that where a charge fully instructs the jury on substantive features of the case, defines and applies the law thereto, the trial court is not required to instruct on a subordinate feature of the case absent a special request. *See State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978). The trial judge in this case witnessed the outburst and was in a position to gauge its effect on the jury. He acted promptly and directed that the witness be immediately removed and continued his instructions to the jury. Aside from defendant's failure to request a curative instruction, such an instruction may well have highlighted the witness's emotional state; indeed it is possible that the defense attorney declined to request a curative instruction because of the likelihood that it would emphasize the witness's outburst. We find no error in the court's failure to give a curative instruction with regard to this matter. This assignment of error is overruled.

After a careful examination of the entire record, we conclude that defendant received a fair trial, free of prejudicial error.

No error.