STEPHENS, Judge.
Defendant appeals from the judgments entered upon his conviction of two counts of first-degree statutory sex offense and one count of indecent liberties with a child. Defendant contends the trial court abused its discretion in refusing to grant a mistrial following an emotional outburst by the juvenile victim and erred in instructing the jury regarding motive and purpose as an element of indecent liberties. We conclude that the trial court neither abused its discretion in denying Defendant's request for a mistrial nor erred in instructing the jury. Defendant received a fair trial free from reversible error.
Factual and Procedural Background
The evidence at trial tended to show the following: In August of 2013, Defendant Ramon Richardson was living with his longtime girlfriend and the girlfriend's ten-year-old daughter, "Jane."[1] Richardson and Jane's mother had been dating since 2007 and living together since 2011, and Jane called Richardson "Daddy." Jane testified that, early on the morning of 23 August 2013, Jane's mother had dozed off after taking pain medication. As Richardson and Jane were sitting on the floor watching television, Richardson tried to pull Jane's pants down and after Jane "pulled them back, then he pulled them down again, that's when he stuck his private into [her] rear end." Jane broke free of Richardson, pulled up her pants, and called to her mother.
Jane's mother testified to being awakened by Jane "screaming at the top of her lungs." Jane told her mother, "[D]addy tried to rape me in the butt." Jane's mother confronted Richardson, told him to leave the home, and then called 911. Jane was "so worked up" about the incident that she was hyperventilating and vomited when Durham Police Department ("DPD") officers arrived. DPD Officer John Foster interviewed Jane, who told him that "she was laying on the floor with [Richardson] and he had begun [rubbing] her bottom and then pulled the back of her pants down and tried to put his penis into her bottom." Jane explained that "she had pushed his penis away from her bottom and said, 'Get off me.' " Jane also reported that, a few nights before, Richardson had put his hand down Jane's pants and put his finger in her vaginal area, moving in a circular motion.
A nurse who examined Jane the following day at the Duke Child Abuse and Neglect Medical Evaluations Center noted an abrasion near Jane's rectum and testified that the area "was moist and red." However, samples taken from Jane were negative for semen and negative for Richardson's DNA. The State also presented testimony from DPD Officer Dominic Mussatti about inculpatory statements Richardson made during an interview, including Richardson's admission that he had "hurt" Jane.
Richardson was charged with two counts of first-degree statutory sex offense, two counts of indecent liberties, and one count of attempted sex offense. The case came on for trial at the 26 October 2015 criminal session of Durham County Superior Court, the Honorable Paul G. Gessner, Judge presiding. As Richardson's trial counsel was making her opening statement, Jane left the courtroom. Richardson contends that Jane "became emotionally overwhelmed within full view of the jury[,] ... abruptly left the courtroom[,] and uttered a scream that everyone could hear." However, the trial transcript reflects only the following:
[Defense counsel]: You will hear she told one version to one person, a different version to a second person, and then still yet a third version to a third person. Ramon Richardson is not a child molester-
(Victim left courtroom.)
THE COURT: Please have the jury go to the jury room for a moment. Leave your notebooks here in the courtroom, please. Thank you.
(Jury sent to the jury room at 4:47 p.m.)
THE COURT: Let the record reflect the jury left the courtroom. Give her a few minutes to calm down. I can't exclude her. It might be in her best interests that she not put herself in a position to become upset.
[Defense counsel]: Your Honor, may I ask, I have no idea what happened. I was doing the argument.
THE COURT: Apparently it made her upset.
[Defense counsel]: Who is she?
THE COURT: The girl.
Outside the presence of the jury, the court and counsel for both sides discussed the incident:
[Defense counsel]: .... I did not see it because I was in the middle of giving my opening statement, but it is my understanding that what happened was [Jane] screamed loudly and ran out of the courtroom during-
THE COURT: She got out of the court room before she started making noise.
[Defense counsel]: She-it was a very loud noise that one could obviously hear. She remained quiet during the State's opening but had an outburst during my opening statement that I would argue is a bell that cannot be unwrung [sic]. The entire jury panel was present and witnessed this outburst. There is no possible way that this jury will be able to forget or to put that out of their mind. The child victim screaming-I'm sorry-running out of the courtroom during my opening statement.
THE COURT: She didn't run out of the courtroom. She walked until she got to the first set of doors, then she started getting upset in the between two doors, vestibule, breezeway, whatever you want to call it.
[Defense counsel]: The child victim getting up and leaving during my opening statement and then screaming loudly where everyone could hear, I guess you're saying, in between the two sets of doors.
THE COURT: That's where it started, most of it was outside.
[Defense counsel]: It is unduly prejudicial to my client. I do not believe there's anyway he will be able to have a fair trial from this point forward with this particular jury. He has a constitutional right to a fair and impartial trial. And I just can't see how the victim getting up and leaving and then screaming loudly enough for every single person in this courtroom, jurors included, to hear is anything that can be undone by any type of correctional statement, and, therefore, I'm moving for a mistrial at this point.
The trial court recalled the jury, polled them about their ability to disregard Jane's outburst, instructed them to disregard the outburst, and denied Richardson's motion for a mistrial:
Members of the jury, during [defense counsel's] opening statement certain witnesses that have been pointed out to you during the jury selection process left the courtroom and were loud and created somewhat of a disturbance. I want to ask you some questions about that.
First I need to just say I'm going to ask you some general questions. I'm going to ask you to raise your hand-if it's appropriate to raise your hands, do so; if not, don't. Does everybody understand that what happened during the opening statement is not evidence; and do you understand that? If you do, please raise your hand. Okay. Let the record reflect all jurors are raising their hand.
Do each of you understand that you can't consider anything that occurred during the opening statement as evidence in this matter? Let the record reflect all members of the jury raised their hand.
Can each of you set aside, you know, what you may have observed or heard or and [sic] what you might feel about that and set it aside and not consider it or allow it to affect your consideration of the evidence and ultimately your deliberations in this case? If you can-please raise your hands if you can set that all aside. Let the record reflect all members of the jury raised their hand.
Again, I will instruct you that your verdict must be based on the evidence that comes out from the witness stand and not from any other source and you are not to let any outburst or displays that may have occurred or you may have heard or witnessed affect your deliberations in this matter.
Richardson moved to dismiss all charges at the close of the State's evidence, and the State dismissed the attempted sex offense charge and one of the indecent liberties charges. The jury returned verdicts of guilty on the two first-degree sex offense charge and the remaining indecent liberties charge. The trial court imposed active sentences totaling 552 to 784 months on the sex offense convictions and a concurrent term of 19-32 months on the indecent liberties conviction. Richardson gave notice of appeal in open court.
Discussion
Richardson brings forward two arguments on appeal: that the trial court (1) abused its discretion in denying Richardson's request for a mistrial and (2) erred in giving what Richardson characterizes as "fatally ambiguous" jury instructions regarding motive and purpose as an element of indecent liberties. We are not persuaded by either argument.
I. Motion for mistrial
Richardson first argues that the trial court abused its discretion by denying his motion for a mistrial near the start of his trial following a brief emotional outburst from the juvenile victim. We disagree.
Our General Statutes provide
that [a trial] judge may declare a mistrial if conduct inside or outside the courtroom results in substantial and irreparable prejudice to the defendant's case. Not every disruptive event occurring during the trial automatically requires the court to declare a mistrial. ...
On appeal, the decision of the trial judge in this regard is entitled to the greatest respect. He is present while the events unfold and is in a position to know far better than the printed record can ever reflect, just how far the jury may have been influenced by the events occurring during the trial and whether it has been possible to erase the prejudicial effect of some emotional outburst. Therefore, unless his ruling is so clearly erroneous so as to amount to a manifest abuse of discretion, it will not be disturbed on appeal.
State v. Newton , 82 N.C. App. 555, 559, 347 S.E.2d 81, 84 (1986) (citations and internal quotation marks omitted) (quoting State v. Sorrells , 33 N.C. App. 374, 377, 235 S.E.2d 70, 72, cert. denied , 293 N.C. 257, 237 S.E.2d 539 (1977) ), disc. review denied , 318 N.C. 699, 351 S.E.2d 756 (1987). Richardson cites no case in which our State's appellate courts have found an abuse of discretion in a trial court's refusal to grant a mistrial on facts and circumstances analogous to those present here.
On the contrary, our review reveals that the highly deferential abuse of discretion standard has been applied and a defendant's arguments of error in the denial of his motion for a mistrial rejected in many cases involving emotional outbursts by victims and their families in full view of juries. See, e.g. , State v. Blackstock , 314 N.C. 232, 333 S.E.2d 245 (1985) (finding no abuse of discretion in the denial of a motion for mistrial following a witness's emotional outburst during jury instructions); State v. Locklear , 322 N.C. 349, 368 S.E.2d 377 (1988) (finding no abuse of discretion in the denial of a motion for mistrial following emotional outburst of murder victim's widow); State v. Ward , 338 N.C. 64, 449 S.E.2d 709 (1994) (finding no abuse of discretion in the denial of a motion for mistrial following victim's husband's outburst), cert. denied , 343 N.C. 757, 473 S.E.2d 626 (1996) ; State v. Revels , 153 N.C. App. 163, 569 S.E.2d 15 (2002) (finding no abuse of discretion in the denial of a motion for mistrial following emotional outburst by victim's family). In Sorrells , for example, this Court considered a defendant's argument of error in the trial court's denial of his motion for a mistrial following an emotional outburst by a rape victim:
After the State presented its evidence and rested, [the] defendant took the stand and testified concerning his activities at Fort Bragg during the morning of 3 June 1975. He then testified that the first time he ever saw the prosecuting witness was in court, and he denied he had raped her. At that point the prosecuting witness jumped up from her chair behind the District Attorney's table and ran toward the defendant shouting, "You no good black so and so, you did do it, you know you did." Courtroom officers intervened and forced the [prosecuting] witness to be seated, and the judge sent the jury to their room. In the absence of the jury, the judge admonished the prosecuting witness concerning her conduct in the courtroom. After a brief recess, the prosecuting witness apologized to the court and stated that she could control herself, and the judge permitted her to remain in the courtroom. The judge then called the jury back and instructed them as follows:
"Members of the jury, I want to instruct you that you will not consider any statement made by the prosecuting witness which was made just a moment or two before I sent you out when she got up out of the chair and approached this witness. That is not evidence and you should put that out of your minds and not consider it under any circumstances."
The trial then proceeded to its conclusion without further untoward incident.
33 N.C. App. at 375-76, 235 S.E.2d at 72. This Court found no abuse of discretion in the trial court's denial of the defendant's motion for a mistrial. Id. at 377, 235 S.E.2d at 72. Not only was the rape victim's outburst much more extreme than Jane walking out of the courtroom and making a loud noise, we concluded that the trial court in Sorrells did not abuse its discretion even though it elected not to poll the jurors regarding their ability to disregard that very dramatic display. See id. Here, the trial court's choice to take that extra caution, in addition to discussing the motion with defense counsel and instructing the jury to disregard Jane's outburst, bolsters our view that its ruling on Richardson's motion for a mistrial was thoughtful and reasoned, and thus, not an abuse of discretion. Accordingly, this argument is overruled.
II. Jury instructions
Richardson also argues that the trial court erred in its jury instructions regarding motive and the purpose element of indecent liberties. Specifically, Richardson contends that the trial court's charge to the jury, per the pattern jury instructions, that motive was not required to convict him on the charge of indecent liberties even though that offense includes the element that the defendant acted for the purpose of arousing or gratifying a sexual desire, was fatally ambiguous. We disagree.
To convict a defendant of indecent liberties,
the State must prove (1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he willfully took or attempted to take an indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire .... The fifth element, that the action was for the purpose of arousing or gratifying sexual desire, may be inferred from the evidence of the defendant's actions.
State v. Rhodes , 321 N.C. 102, 104-05, 361 S.E.2d 578, 580 (1987) (citation omitted; emphasis added). Here, in addition to instructing the jury on each of these elements, the trial court instructed the jury that "[p]roof of motive for the crime is permissible and often valuable, but never essential for a conviction." See N.C.P.I. Crim. 104.10. Richardson's argument is premised on his bare assertion that "motive" and "purpose" are synonymous, citing only Burton's Legal Thesaurus 440 (3d ed. 1998) as supporting authority. While we agree that both motive and purpose are internal thought processes and perhaps even loosely related, they are certainly not synonymous.
"Motive" is defined as "[s]omething, [especially] willful desire, that leads one to act[,]" while "purpose" is defined as "[a]n objective, goal, or end [.]" Black's Law Dictionary 1110, 1359 (9th ed. 2009). Thus, in a legal context, purpose is akin to intent, a form of mens rea . See, e.g. , Morissette v. United States , 342 U.S. 246, 252, 6 L.Ed. 288, 295 (1952). For example, a person who is proved beyond a reasonable doubt to have broken and entered a dwelling house in the nighttime for the purpose of stealing a large amount of cash will have committed the offense of second-degree burglary. See e.g. , State v. Jamison , 234 N.C. App. 231, 236, 758 S.E.2d 666, 670 (2014) (defining second-degree burglary as "a breaking and entering during the nighttime of a dwelling or sleeping apartment with intent to commit a felony therein") (citation omitted). The person's motive for this crime-whether to obtain money for buying illegal drugs or to pay for an expensive life-saving operation for his young child-need not be proven since it does not matter in and of itself, although, in the absence of direct evidence of an essential element, it may form part of circumstantial evidence considered by a jury.
Likewise, here, the jury found beyond a reasonable doubt that Richardson's purpose in taking an indecent liberty with Jane was to arouse or gratify sexual desire, and not, for example, for the purpose of some perceived medical purpose. Richardson's motive in committing this offense against Jane-for example, to hurt and frighten Jane, to show love to Jane in a perverted way, to punish Jane's mother, or any other possible motive-is entirely irrelevant to the criminal case against him. Accordingly, the trial court's jury instructions were neither ambiguous nor erroneous. This meritless argument is overruled.
NO ERROR.
Report per Rule 30(e).
Judges ELMORE and DIETZ concur.

We use a pseudonym to refer the minor victim in this case in order to protect her privacy.