ZACHARY, Judge.
Defendant Schanen Duvene Watts appeals from judgments entered upon jury verdicts finding him guilty of felonious assault inflicting serious bodily injury, violation of a domestic violence protective order while in possession of a deadly weapon, and first-degree forcible sexual offense. Defendant argues that the trial court committed plain error by failing to instruct the jury that it could not find Defendant guilty of first-degree forcible sexual offense unless it found that the alleged assault and sexual offense were part of one continuous transaction. For the reasons explained below, we conclude that the trial court erred in failing to instruct the jury regarding a continuous transaction; however, that error did not rise to the level of plain error, and therefore Defendant's conviction remains undisturbed.
I. Background
Defendant and Paula[1] first met in 2010 while she was working in Charlotte as a mail carrier for the United States Postal Service. The pair dated, were involved in an intimate relationship, and lived together for approximately five or six years. On 23 March 2016, Paula obtained a domestic violence protective order against Defendant after he threw a phone at her head and punched her in the eye.
Paula requested and received transfers to different post office locations because of Defendant's continued harassment. However, on 6 July 2016, Defendant discovered Paula's mail route and confronted her again. Paula testified that Defendant took her phone and wanted to know "[w]ho I was communicating with, because I wasn't communicating with him. There was a hotel room number in there specifically that upset him." A person with whom she had a previous relationship was staying in that hotel room and wanted Paula to visit him, but she declined.
Paula and Defendant agreed to meet later that day at Winterfield Park after she got off work. Upon meeting, Defendant and Paula discussed the existing protective order. She apologized and, trying to mollify Defendant, asked if there was something she could do to make it better. Defendant responded, "well, I'm glad you asked that question because your answer, how you answer is going to depend on what happens next."
Defendant demanded that Paula call her friend who was staying in the hotel room. After she refused, Defendant punched her in the left eye with his closed fist, and ordered her to call her friend and "tell him exactly what I tell you to say." Paula called her friend, and Defendant demanded that she ask him whether he had a good time last night. When the friend responded affirmatively, Defendant punched Paula in her face again. Paula testified that Defendant forced her to repeat the question, and after her friend again said yes, Defendant "went to hitting me and kicking me, grabbed me by my hair." While she was lying on the ground, Defendant continued to kick and punch Paula. Paula testified that Defendant said, "let's see if they call you the pretty mail lady without your teeth."
When Paula picked herself up off the ground, Defendant punched her again, and her "lip went straight across [her] front tooth and it got caught on [her] tooth and came off and there was blood squirting everywhere." In shock and extreme physical pain, Paula went in and out of consciousness. During a break in the assault, Paula pleaded with Defendant to stop and for them to leave the park. She feared dying in the park, because Defendant had "told [her] he should just finish [her] out there." Paula begged Defendant to get a hotel room. Defendant agreed and assisted Paula to the car, as she was unable to walk under her own strength. Although she did not want to get into the car with Defendant, she "believed that was the way [she] was going to get out of there at that time."
Defendant drove Paula to a hotel in Charlotte and helped her into the room. Paula testified that she wanted to lie down "because [her] body was hurting," and she took off her dress. She told Defendant she was hungry, and he left to get some food. She then passed out, but awoke shortly thereafter, while Defendant was eating.
Defendant then got into bed with Paula and repeatedly apologized. He began kissing and rubbing Paula, and eventually had sexual intercourse with her, which she testified was painful. Defendant then inserted his penis into Paula's anus, and she told Defendant that he was hurting her. Although Paula did not want to have sex, she did not say anything at the time.
Defendant left and Paula dozed off again. Eventually, she left the hotel room because she was fearful that Defendant would return. She testified, "I didn't know if he was going to come right back. I was scared. I knew I couldn't take any more hits; I couldn't, there was no way, so I didn't know what to do. I stayed longer than I feel I should have, but I left." Paula went downstairs to the hotel lobby, asked to use the phone, and hid in the lobby bathroom while she called 911. Defendant later returned to the hotel, but fled when he spotted Charlotte-Mecklenburg police officers at the scene. Emergency personnel transferred Paula to the hospital to receive treatment for her injuries.
About a month later, Defendant was located and arrested. On 15 August 2016, the Mecklenburg County Grand Jury indicted Defendant on charges of assault inflicting serious bodily injury, violating a civil domestic violence protective order, felonious restraint, second-degree forcible rape, second-degree forcible sexual offense, and larceny of a motor vehicle. On 6 September 2016, the grand jury returned additional indictments charging Defendant with first-degree forcible rape, first-degree kidnapping, and first-degree forcible sexual offense. The State subsequently dismissed the charge of larceny of a motor vehicle.
Defendant's trial began on 13 November 2017 in Mecklenburg County Superior Court, the Honorable Daniel A. Kuehnert presiding. On 21 November 2017, the jury returned verdicts finding Defendant guilty of felonious assault inflicting serious bodily injury, violation of a protective order while in possession of a deadly weapon, and first-degree forcible sexual offense. The jury found Defendant not guilty of felonious restraint, first-degree forcible rape, second-degree forcible sexual offense, first-degree kidnapping, and second-degree kidnapping. The trial court sentenced Defendant to consecutive terms of imprisonment totaling 297 to 435 months. Defendant gave oral notice of appeal in open court.
II. Discussion
Defendant argues that the trial court committed plain error by failing to instruct the jury that it could not find Defendant guilty of first-degree forcible sexual offense unless it determined that the alleged physical assault and sexual offense were part of one continuous transaction. Defendant failed to object when the trial court omitted this jury instruction, but argues on appeal that the trial court's omission amounted to plain error. See N.C.R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").
To establish plain error, "a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citation and quotation marks omitted). Plain error should "be applied cautiously and only in the exceptional case." Id. (quotation marks omitted). Also, the error "will often ... seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." Id. "[T]he plain error standard of review applies on appeal to unpreserved instructional or evidentiary error." Id.
A. Continuous Transaction
The jury convicted Defendant of first-degree forcible sexual offense. North Carolina law in effect at the time of the offense provided that
[a] person is guilty of a first degree forcible sexual offense if the person engages in a sexual act with another person by force and against the will of the other person, and does any of the following:
(1) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon.
(2) Inflicts serious personal injury upon the victim or another person.
(3) The person commits the offense aided and abetted by one or more other persons.
N.C. Gen. Stat. § 14-27.26(a) (2015).[2]
In State v. Blackstock , 314 N.C. 232, 333 S.E.2d 245 (1985), our Supreme Court explained the requisite temporal connection between the act causing serious physical injury in a first-degree sexual offense and the alleged sexual offense itself. The Supreme Court held that
the element of infliction of serious personal injury upon the victim or another person ... is sufficiently connected in time to the sexual acts when there is a series of incidents forming one continuous transaction between the ... sexual offense and the infliction of the serious personal injury. Such incidents include injury inflicted on the victim to overcome resistance or to obtain submission, injury inflicted upon the victim or another in an attempt to commit the crimes or in furtherance of the crimes of ... sexual offense, or injury inflicted upon the victim or another for the purpose of concealing the crimes or to aid in the assailant's escape.
Id. at 242, 333 S.E.2d at 252. However, the defendant's infliction of serious personal injury is not "limited to the period of time when the victim's resistance was being overcome or her submission procured." Id. at 241, 333 S.E.2d at 251. Whether the facts in evidence establish an unbroken chain of events forming one continuous transaction is a question of fact for the jury to determine. See State v. Palmer , 334 N.C. 104, 113, 431 S.E.2d 172, 176-77 (1993).
B. Jury Instructions
The primary purpose of instructing the jury is "to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved." State v. Overton , 60 N.C. App. 1, 20, 298 S.E.2d 695, 707 (1982), appeal dismissed and disc. review denied , 307 N.C. 580, 299 S.E.2d 652 (1983). Jury instructions are reviewed contextually and in their entirety, and the instructions will be upheld if they present the law of the case in a manner that does not mislead or misinform the jury. State v. Blizzard , 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005).
"A trial judge is required ... to instruct the jury on the law arising on the evidence. This includes instruction on the elements of the crime. ... Failure to instruct upon all substantive or material features of the crime charged is error." State v. Bogle , 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). "[W]here a charge fully instructs the jury on substantive features of the case, defines and applies the law thereto, the trial court is not required to instruct on a subordinate feature of the case absent a special request." Blackstock , 314 N.C. at 245, 333 S.E.2d at 253.
When a question of fact that is substantive and material to a defendant's guilt or innocence arises from the evidence presented at trial, the jury must be instructed on the applicable law. See State v. Coleman , 227 N.C. App. 354, 360, 742 S.E.2d 346, 350, disc. review denied , 367 N.C. 271, 752 S.E.2d 466 (2013). The Coleman defendant was convicted on charges of drug trafficking. Id. at 358, 742 S.E.2d at 349. The defendant contested knowledge, an essential element of the offense, raising a question of fact as to whether he was aware of the identity of the substance. Id. at 359-60, 742 S.E.2d at 350. "[T]he evidence presented and arguments of counsel put the jury on notice that a critical issue in this case was" the defendant's knowledge. Id. at 363, 742 S.E.2d at 352. This Court held that the trial court erred by failing to instruct the jury that it must find that the defendant knew the identity of the substance because this factual question was substantial and essential to his guilt or innocence. Id.
In the instant case, whether the physical assault that occurred at the park and the sexual offense that occurred at the hotel constituted a continuous transaction of events was a contested issue. At the close of all the evidence, Defendant moved to dismiss the charges of first-degree rape and first-degree sexual offense, arguing that the physical assault and the sexual offense did not form a continuous transaction. After discussing the issue with defense counsel and the prosecutor, the trial court determined that the events were part of a continuous transaction and denied Defendant's motion to dismiss. During closing arguments, defense counsel admitted the assault, but maintained that it had occurred at the hotel, after Defendant and Paula engaged in consensual sex. The evidence presented at trial was also conflicting as to this issue.
It is evident upon review of the record that the issue of whether these events formed one continuous transaction was disputed. Moreover, this question of fact was substantial and material to Defendant's guilt or innocence of the charged offense. If the jury determined that the physical assault and sexual offense were not part of a continuous transaction, then it could not find Defendant guilty of first-degree sexual offense. The trial court instructed the jury that:
The Defendant has been charged with first-degree forcible sex offense. Under the law and the evidence in this case, it is your duty to return one of the following verdicts. Guilty of first-degree forcible sex offense, guilty of second degree forcible sexual offense, or not guilty.
For you to find the Defendant guilty of first-degree forcible sexual offense, the State must prove four things beyond a reasonable doubt. First, that the Defendant engaged in a sexual act with the victim. Sexual act means anal intercourse, which is any penetration, however slight, of the anus of any person by the male sexual organ of another.
Second, the Defendant used or threatened to use sufficient force, sufficient to overcome any resistance the victim might make. Force necessary to constitute the sexual offense need not be actual physical force. Fear or coercion may take the place of physical force.
Third, that the [victim] did not consent and that it was against her will. Consent induced by fear is not consent at law.
Fourth, that the Defendant inflicted serious injury upon the victim. Should you find from the evidence beyond a reasonable doubt that anal intercourse, the anal intercourse was not consensual, and the serious injury need not be inflicted to procure the victim's submission but rather the injury could be inflicted either before, during, or after the anal intercourse.
If you ... find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant engaged in a sexual act with the victim, and that he did so by force or threat of force, and that this was sufficient to overcome any resistance which the victim might make, that the victim did not consent and it was against her will, and that the Defendant inflicted serious injury to the victim, it would be your duty to return a verdict of guilty of first-degree forcible sexual offense.
Although the trial court instructed the jury that "the injury could be inflicted either before, during, or after the anal intercourse," this instruction did not indicate that a temporal nexus must exist between the assault and the sexual offense. Accordingly, the trial court erred in failing to instruct the jury that it must find that the physical assault inflicting serious injury and the alleged sexual offense formed one continuous transaction.
Nevertheless, because Defendant failed to object at trial, we must determine whether the omission of this instruction rises to the level of plain error. After reviewing the entire record, we are unconvinced that "the error had a probable impact on the jury's finding that ... [D]efendant was guilty," Lawrence , 365 N.C. at 518, 723 S.E.2d at 334 (quotation marks omitted), or that the error was "one that seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceedings." Id. The evidence supports the conclusion that the physical assault and the sexual offense were part of a series of events forming one continuous transaction. Paula provided a detailed account of the violent attack she suffered. Paula testified that Defendant repeatedly punched and kicked her at the park. Fearing for her life, she wanted to leave the park. Although she did not want to go with Defendant, she believed that doing so was the only way to avoid further injury or death. She rode with Defendant to the hotel, where he penetrated her vaginally and anally without her consent. The jury was presented with evidence showing Paula's physical condition after the assault, including photographs of her swollen face, cut lip, bloodstained clothing, and bloodstained items from the hotel room. Immediately following the attack, Paula was unable to eat anything because of her painful injuries, which included a torn lip, bruising, and swelling to her face. She was unable to eat solid food for a month, and her face remained swollen for eight to ten months. Because the State presented substantial evidence that these events formed one continuous transaction, we do not believe that the trial court's failure to so instruct the jury affected the outcome of Defendant's trial, and therefore the error did not rise to the level of plain error.
III. Conclusion
The trial court erred in failing to instruct the jury that in order for it to find Defendant guilty of first-degree sexual offense, it must find that the physical assault and sexual offense were part of a series of events forming one continuous transaction. Although the trial court erred in its instructions, we nevertheless determine that the error did not rise to the level of plain error. Accordingly, Defendant's conviction of first-degree sexual offense remains undisturbed.
NO ERROR.
Report per Rule 30(e).
Judges TYSON and COLLINS concur.

We adopt a pseudonym to protect the identity of the victim.

The General Assembly amended subsection (a)(1) by removing "[e]mploys or displays a" and inserting "[u]ses, threatens to use, or displays a." 2017 N.C. Sess. Laws 193, ch. 30, § 2. The amendment became effective 1 December 2017 and applies to offenses committed on or after that date. Id. § 3.