*25 ELMORE, Judge.
*231 On 16 May 2011 and 25 June 2012, Shawn David Sullivan (defendant) was indicted on twenty-nine drug-related offenses allegedly involving steroids and human growth hormone. Defendant was tried on his not-guilty plea during the 7 January 2013 session of New Hanover County Superior Court. The jury found defendant guilty of ten of the offenses. Pertinent to this appeal, defendant was found guilty of selling and/or delivering Uni-Oxidrol, Uni-Oxidrol 50, and Sustanon.
Judge Hockenbury consolidated the convictions into two judgments, sentencing defendant to two consecutive terms of five to six months imprisonment, suspended for a period of eighteen months supervised probation. Defendant raises two issues on appeal. He first challenges three of his convictions on the basis that the indictments charging the offenses are facially invalid. We agree with defendant and vacate the requisite three convictions. Next, defendant argues that the evidence presented by the State was insufficient to support five of his convictions. We are not convinced, and accordingly we overrule defendant's second issue on appeal.
I. Background
The facts of this case are not in dispute. On 6 August 2010, Cedric Simpson was stopped for a traffic violation in New Hanover County by Sheriff's Deputy Anthony Bacon, who had information that Mr. Simpson trafficked in cocaine. A K-9 unit searched Mr. Simpson's vehicle during the stop. Steroids and prescription medication were recovered, but no cocaine was found in the vehicle.
Mr. Simpson informed law enforcement that he had purchased the steroids found in his vehicle from defendant. Mr. Simpson alleged that he and defendant had known each other for approximately fifteen years, and that they often went to the gym or movies together. Law enforcement arranged for Mr. Simpson to complete multiple controlled buys of controlled substances, primarily steroids, from defendant.
On 3 September 2010, Mr. Simpson allegedly purchased from defendant 118 pills of Uni-Oxidrol, which resulted in defendant being charged in 10 CRS 60225 for felonious possession with intent to sell/deliver Uni-Oxidrol and Uni-Oxidrol 50. Mr. Simpson also allegedly purchased a bottle of liquid testosterone, which resulted in defendant being charged in 10 CRS 60224 for felonious possession with intent to sell/deliver Testosterone Enanthate, and for intentionally maintaining a building for the purpose of selling the controlled substance(s) Uni-Oxidrol and Sustanon.
*232 On 21 September 2010, Mr. Simpson allegedly purchased from defendant a bottle containing 50 pills of Uni-Oxidrol 50, and a bottle of liquid labeled " Sustanon 250." The pills became the basis for the two charges in 10 CRS 60233 for felonious possession with intent to sell/deliver Uni-Oxidrol. The liquid became the basis for the two charges in 10 CRS 60232 for felonious possession with intent to sell/deliver Sustanon, and for intentionally maintaining a building for the purpose of selling the controlled substance(s) Uni-Oxidrol and Sustanon.
On 29 September 2010, Mr. Simpson allegedly purchased from defendant three glass bottles of liquid labeled Trenbolone Acetate, which became the basis for the charges in 10 CRS 60234 for felonious possession with intent to sell/deliver Trenbolone Acetate, and for intentionally maintaining a building for the purpose of selling the controlled substance Trenbolone Acetate.
On 2 October 2010, the Sheriff's Department executed a search warrant on defendant's home and place of business. At defendant's home authorities found no controlled substances, but they found $120.00 of cash in a safe. The currency in the safe matched the "buy money" Mr. Simpson used to make the purchases from defendant during the controlled buys.
Defendant now appeals his convictions stemming from the alleged sale/transfer of the controlled substances named above.
II. Analysis
A. Sufficiency of the Indictments
Defendant contends that the trial court lacked jurisdiction on three charges of felonious sale/delivery of a controlled substance because the indictments were facially invalid *26 as they did not name controlled substances listed in Schedule III. We agree.
It is well settled that a felony conviction must be supported by a valid indictment which sets forth each essential element of the crime charged. State v. Westbrooks, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996) ; State v. Sturdivant, 304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981). Identity of a controlled substance allegedly possessed constitutes such an essential element. State v. Board, 296 N.C. 652, 658-59, 252 S.E.2d 803, 807 (1979) (testimony that substance a special agent purchased was "MDA" was held insufficient evidence that defendant possessed and sold "3, 4-methylenedioxyamphetamine" as charged in bills of indictment). "An indictment is invalid where it fails to state some essential and necessary *233 element of the offense of which the defendant is found guilty." State v. Ledwell, 171 N.C.App. 328, 331, 614 S.E.2d 412, 414 (2005) (citations and internal quotations omitted).
Here, the indictment in 10 CRS 60225 charged defendant with "unlawfully, willfully and feloniously [possessing] with the intent to manufacture, sell and/or deliver a controlled substance, to wit: UNI-OXIDROL, which is included in Schedule III of the North Carolina Controlled Substances Act" and also charged defendant with selling and/or delivering to "A. Simpson a controlled substance, to wit: UNI-OXIDROL 50, which is included in Schedule III of the North Carolina Controlled Substances Act."
The indictment in 10 CRS 60232 charged defendant with possession with intent to sell or deliver a controlled substance, "to wit: SUSTANON, which is included in Schedule III of the North Carolina Controlled Substances Act."
The indictment is 10 CRS 60233 charged defendant with possession with intent to sell or deliver a controlled substance, "to wit: UNI-OXIDROL, which is included in Schedule III of the North Carolina Controlled Substances Act."
Defendant contends that because neither Uni-Oxidrol, Uni-Oxidrol 50, nor Sustanon are substances that are included in Schedule III of the North Carolina Controlled Substances Act, the indictments charging the above crimes are fatally flawed and the convictions stemming therefrom must be vacated. Defendant's argument has merit.
In advancing his argument, defendant relies on this Court's opinions in State v. Ledwell, 171 N.C.App. 328, 614 S.E.2d 412 (2005), State v. Ahmadi-Turshizi, 175 N.C.App. 783, 625 S.E.2d 604 (2006), and State v. LePage, 204 N.C.App. 37, 693 S.E.2d 157 (2010).
In Ledwell, the indictment charging the defendant alleged that the defendant "did possess Methylenedioxyamphetamine (MDA), a controlled substance included in Schedule I of the North Carolina Controlled Substances Act." Ledwell, 171 N.C.App. at 331, 614 S.E.2d at 414. However, this Court held that the indictment was facially invalid and vacated the defendant's conviction because "the substance listed in [the] Defendant's indictment does not appear in Schedule I of the North Carolina Controlled Substances Act." Id. at 333, 614 S.E.2d at 415.
Similarly, in Ahmadi-Turshizi, the defendant was charged with three offenses for the possession, sale, and delivery of *234 "methylenedioxymethamphetamine a controlled substance which is included in Schedule I of the North Carolina Controlled Substances Act." 175 N.C.App. at 785, 625 S.E.2d at 605. This Court noted that Schedule I outlined a long list of controlled substances by their specific chemical name, including the substance "3, 4-Methylenedioxymethamphetamine (MDMA)." Id. However, a substance simply called "methylenedioxymethamphetamine" was not listed. Id. Relying on Ledwell, this Court vacated the defendant's convictions on the same basis, concluding that the indictment charging the defendant was fatally flawed because the substance named in the indictment was not listed in Schedule I of our Controlled Substances Act. Id. at 785-86, 625 S.E.2d at 605-06 (holding "when an indictment fails to list a controlled substance by its chemical name as it appears in Schedule I of North Carolina General Statutes, section 90-89, the indictment must fail" ). *27 Finally, in LePage, the challenged indictments charged the defendant with certain crimes involving " BENZODIAZEPINES, which is included in Schedule IV of the North Carolina Controlled Substances Act[.]" 204 N.C.App. at 54, 693 S.E.2d at 168. Because "BENZODIAZEPINES" was not listed among any of the sixty-seven substances listed in Schedule IV, and because there existed derivatives of the benzodiazepine category of drugs that were not listed under Schedule IV, the LePage Court vacated the defendant's convictions, holding: "We are bound by the principle established under Ledwell and Ahmadi-Turshizi, that when an indictment fails to list a controlled substance by its chemical name as it appears in [the relevant Schedule of the North Carolina Controlled Substances Act], the indictment must fail." Id. at 54, 693 S.E.2d at 168 (alteration in original).
Here, neither Uni-Oxidrol, Oxidrol 50, nor Sustanon are substances that are included in Schedule III of the North Carolina Controlled Substances Act. Further, none of these substances are considered trade names for other substances included in Schedule III. As such, we note that the State is misguided in arguing that this case is analogous to State v. Newton, 21 N.C.App. 384, 386, 204 S.E.2d 724, 725 (1974) (holding that because the substance named in the defendant's indictment, Desoxyn, was a trade name for methamphetamine, which was the substance that the defendant was shown to have possessed and was likewise included in the Controlled Substances Act, there was no variance between the charge listed in the indictment and the proof).
This Court is similarly bound by the principles established under Ledwell, Ahmadi-Turshizi , and LePage. As a consequence, the *235 challenged indictments must fail as they are fatally flawed. We vacate defendant's convictions resulting from the charges alleged in 10 CRS 60225, 60232, and 60233.
B. Sufficiency of the Evidence
Defendant next argues that the trial court erred in denying his motion to dismiss the sale and/or delivery charges in case numbers 10 CRS 60224, 10 CRS 60232, 10 CRS 60225, 10 CRS 60233, and 10 CRS 60234 based on his contention that there was a fatal variance between the indictments and the evidence produced during the State's case-in-chief. Specifically, defendant argues that no evidence was supplied during the State's case-in-chief that defendant sold controlled substances to "A. Simpson." We disagree. In the first issue, we vacated the convictions for 10 CRS 60232, 60225, and 60233. Therefore, we need only address defendant's argument in regards to 10 CRS 60224 and 60234.
"Where a sale is prohibited, it is necessary for a conviction to allege in the bill of indictment the name of the person to whom the sale was made, or that his name is unknown, unless some statute eliminates that requirement." State v. Johnson, 202 N.C.App. 765, 767-68, 690 S.E.2d 707, 709 (2010). Additionally, "the proof must conform to the allegations and establish a sale to the named person or state that the purchaser was in fact unknown." Id. at 768, 690 S.E.2d at 709. The intended purpose of describing a person by his or her name is to identify the person. Id.
In general, "a person may be designated in a legal proceeding by the name by which the person is commonly known, even though it may not constitute the person's 'true name.' Moreover, it is not necessary that the person be known as well by the one name as by the other, and it is sufficient if the person is known by both names." Id. at 768, 690 S.E.2d at 709. "Where different names are alleged to relate to the same person, the question is one of identity and is exclusively for the jury." Id. at 768-69, 690 S.E.2d at 709.
Defendant notes that the indictments allege that defendant "did sell and/or deliver to A. Simpson a controlled substance...." (emphasis added). However, during trial Mr. Simpson testified that he was named "Cedrick Simpson," not "A. Simpson." Because of this discrepancy, on appeal defendant contends that his convictions must be vacated because "there was no evidence that [defendant] sold or delivered a controlled substance to A. Simpson." We are not persuaded.
*28 Here, the indictments name "A. Simpson" as the purchaser of the controlled substances, but Mr. Simpson testified that his name is "Cedric *236 Simpson." However, neither during trial nor on appeal did defendant argue that he was confused as to Mr. Simpson's identity or prejudiced by the fact that the indictment identified "A. Simpson" as the purchaser instead of " Cedric Simpson" or "C. Simpson." In fact, defendant testified that he had seen Cedric Simpson daily for fifteen years at the gym. The evidence suggests that defendant had no question as to Mr. Simpson's identity. The mere fact that the indictment named "A. Simpson" as the purchaser of the controlled substances is insufficient to require that defendant's convictions be vacated when there is no evidence of prejudice, fraud, or misrepresentation. See id. at 768, 690 S.E.2d at 709. Again, "[w]here different names are alleged to relate to the same person, the question is one of identity and is exclusively for the jury to decide." Id. at 768-69, 690 S.E.2d at 709 ; see also State v. Walls, 4 N.C.App. 661, 167 S.E.2d 547 (1969). Here, the question of the purchaser's identity was resolved by the jury. "The indictment and the evidence sufficiently established the identity of the purchaser to meet constitutional standards and requirements of proof." Johnson, 202 N.C.App. at 769, 690 S.E.2d at 709. Accordingly, we hold that the trial court did not err in denying defendant's motion to dismiss.
Vacated, in part; no error, in part; new sentencing hearing.
Judges GEER and DILLON concur.