HUNTER, JR., Robert N., Judge, Dissenting.
I dissent. An indictment is the sine qua non of criminal jurisdiction as required by Article I, Section 22 of the Constitution of North Carolina. To indict, twelve to eighteen *46 persons sitting as a grand jury have to concur in the indictment. N.C. Gen.Stat. § 15A-621. The language of an indictment is presented to the grand jury by a District Attorney pursuant to N.C. Gen.Stat. § 15A-627. The purpose of Constitutional provisions for indictments is: "(1) to provide certainty so as to identify the offense, (2) to protect the accused from twice being put in jeopardy for the same offense, (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of guilty or Nolo contendere, to pronounce sentence according to the rights of the case." State v. Foster, 10 N.C.App. 141, 142-43, 177 S.E.2d 756, 757 (1970) (citation omitted); see also State v. Stokes, 274 N.C. 409, 411, 163 S.E.2d 770, 772 (1968). In my view, the language of the indictment fails under our precedents to meet these standards.
On 1 April 2013, the grand jury indicted Morris Leavett Stith on two counts, as follows:
Count I
Offense: Possession of SCH II CS with Intent to Sell or Deliver
Date of Offense: November 21, 2012
In violation of: N.C.G.S. 90-95(a)(1)
I. The jurors for the State upon their oath present that on or about November 21, 2012, in the county of Johnston, the Defendant named above, unlawfully, willfully, and feloniously did possess acetaminophen and hydrocodone bitartrate (Percocet ), with the intent to sell or deliver said acetaminophen and hydrocodone bitartrate (Percocet ). Acetaminophen and hydrocodone bitartrate (Percocet ) is a controlled substance which is included in Schedule II of the North Carolina Controlled Substances Act. The act is in violation of N.C.G.S. § 90-95(a)(1).
Count II
Offense: Trafficking in Opiates, Synthetic Opiates and Opiate Derivatives by Sale
Date of Offense: November 21, 2012
In violation of: N.C.G.S. 90-95(h)(4)(a)
II. The jurors for the State upon their oath further present that on or about November 21, 2012, in the county of Johnston, the Defendant named above intentionally, unlawfully, willfully, and feloniously did traffick in opium or opiates or a derivative or preparation of opium or opiate or any mixture containing such substances, by selling four (4) grams or more but less than fourteen (14) grams of Acetaminophen and Hydrocodone Bitartrate (Percocet ), a controlled substance which is included in Schedule II of the North Carolina Controlled Substances Act, to Selma Jerome. This act was in violation of North Carolina General Statutes Section 90-95(h)(4)(a).
Count One of this indictment is jurisdictionally deficient under settled law of this court consistently applied in State v. Ledwell, 171 N.C.App. 328, 331, 614 S.E.2d 412, 414 (2005), State v. Turshizi, 175 N.C.App. 783, 625 S.E.2d 604 (2006), and State v. Sullivan, --- N.C.App. ----, 775 S.E.2d 23 (2015). See also State v. Barnes, 213 N.C.App. 424, 714 S.E.2d 274 (2011) (unpublished). Count Two of the indictment is also jurisdictionally deficient because its language fails to meet all four of the standards set forth in Foster and Stokes.
Realizing under our holdings in Ledwell, Turshizi , and Sullivan that this indictment did not confer jurisdiction to the trial court, the State moved to "amend" the indictment, which the court granted, and the Assistant District Attorney struck through "Schedule II" in Counts I and II. It is apparent the State did this in an attempt to cure fatal defects in the indictment.
Because only a grand jury can indict a defendant, a court is prohibited by statute from amending an indictment in a material way. N.C. Gen.Stat. § 15A-923(e) ; State v. White, 202 N.C.App. 524, 527, 689 S.E.2d 595, 596-97 (2010) ("[O]ur appellate courts have interpreted [section 15A-923(e) ] to mean that a bill of indictment may not be amended in a manner that substantially alters the charged offense.") (citations and quotation marks omitted). Because the original indictment was defective, one cannot tell whether the amended version would have been concurred by twelve grand jurors or not. The defects could have been cured in advance of the trial had the Assistant District *47 Attorney sought a superseding indictment, but she did not. The court lacked jurisdiction to both hear the matter or to amend the indictment.
The trafficking statute charged in Count II, N.C. Gen.Stat. § 90-95(h)(4)(a), punishes "[a]ny person who sells, manufactures, delivers, transports, or possesses four grams or more [but less than fourteen grams] of opium or opiate, or any salt, compound, derivative or preparation of opium or opiate (except apomorphine, nalbuphine, analoxone and naltrexone and their respective salts), including heroin, or any mixture containing such substance...." N.C. Gen.Stat. § 90-95(h)(4)(a). Count II alleges Defendant trafficked "a controlled substance which is included in Schedule II of the North Carolina Controlled Substances Act." Our statutes define a "controlled substance" as a "drug, substance, or immediate precursor included in Schedules I through VI" of the North Carolina Controlled Substances Act. N.C. Gen.Stat. § 90-87(5).
Reviewing the indictment, it is unclear whether the grand jury concurred in finding Defendant trafficked "opiates, synthetic opiates, or opiate derivatives," "Acetaminophen and Hydrocodone Bitartrate," "Percocet," or "a controlled substance which is included in Schedule II of the North Carolina Controlled Substances Act." Schedule II includes "opium and opiate, and any salt, compound, derivative, or preparation of opium and opiate," N.C. Gen.Stat. § 90-90(1)(a), and "Hydrocodone," N.C. Gen.Stat. § 90-90(1)(a)(10), but it does not enumerate Acetaminophen, Hydrocondone Bitartrate, Percocet, or the substance proven at trial, "Hydrocodeinone," which appears as "dihydrocodeinone" in Schedule III. N.C. Gen.Stat. § 90-91(d)(3)-(4). This flaw poses jurisdictional problems for the trial court.
Under the long standing jurisprudence of this Court, and our Supreme Court, it is apparent the trial court did not have jurisdiction to act under the indictment. "It is elementary that a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." Ledwell, 171 N.C.App. at 331, 614 S.E.2d at 414 (citing State v. Sturdivant, 304 N.C. 293, 308, 283 S.E.2d 719 (1981) ). "An 'indictment must allege all of the essential elements of the crime sought to be charged.' " Ledwell, 171 N.C.App. at 331, 614 S.E.2d at 414 (citing State v. Westbrooks, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996) ). "Identity of a controlled substance allegedly possessed is such an essential element." Ledwell, 171 N.C.App. at 331, 614 S.E.2d at 414 (citation omitted). "An indictment is invalid where it fails to state some essential and necessary element of the offense of which the defendant is found guilty." Id. (citations and quotation marks omitted).
Punishment for trafficking opiates depends upon drug weight, not drug scheduling. N.C. Gen.Stat. §§ 90-95(h)(4)(a) -(c). The State was not required to cite Schedule II, or any specific controlled substance schedule, when it indicted Defendant for violating N.C. Gen.Stat. § 90-95(h)(4)(a). Nonetheless, the State incorrectly identified the controlled substance, hydrocodeninone, with the "Schedule II" language. This identification is essential to the indictment, and it marks a fatal flaw that deprives the court of jurisdiction. Ledwell, 171 N.C.App. at 331, 614 S.E.2d at 414 (citation omitted).
Further, the State changed the identity of the controlled substance alleged in Count II by striking the "Schedule II" language, which is an inherently statutory matter. Our statutes prevent trial courts from making these kinds of amendments precisely so only a grand jury can indict a defendant as provided in our Constitution. N.C. Gen.Stat. § 15A-923(e) ; N.C. Const. art. I, § 22. With a fatally flawed indictment and no jurisdiction to impose a felony judgment, the trial court should have dismissed the case. I am not persuaded by the majority's attempts to distinguish the controlling decisions. We are bound to follow these decisions. In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Nor am I persuaded by the law of Louisiana in this matter. Believing that a certain result should obtain in this case does not follow the law. Therefore, I must respectfully dissent and I would vacate the judgment imposed on Counts I and II. See Ledwell, 171 N.C.App. 328, 614 S.E.2d 412 ;
*48 Turshizi, 175 N.C.App. 783, 625 S.E.2d 604 ; Sullivan, --- N.C.App. ----, 775 S.E.2d 23.