STATE OF NORTH CAROLINA v. ASIA NIANGEL SPRINGS

No. COA09-158

(Filed 6 October 2009)

**1. Evidence— credibility—improper opinion**

The trial court erred in a controlled substances case by improperly expressing an opinion that tended to discredit defendant's defense theory. The trial court's statements unintentionally suggested that it had already assessed the credibility of defend-

ant's evidence and found it lacking. The remark was prejudicial because it went to the heart of the theory of defense.

**2. Constitutional Law— double jeopardy—convictions for possession of a controlled substance and possession of a controlled substance with intent to sell or deliver**

Defendant's right to be free from double punishment was not impaired based on her convictions for both felony possession of marijuana and felony possession with intent to sell or deliver marijuana.

Appeal by defendant from judgments entered 21 August 2008 by Judge Michael E. Helms in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 August 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Lisa Granberry Corbett, for the State.*

*Daniel F. Read for defendant.*

ELMORE, Judge.

Asia Niangel Springs (defendant) was found guilty by a jury of possession with intent to sell or deliver a controlled substance (marijuana), felony possession of a controlled substance (marijuana, more than one and a half ounces), intentionally keeping and maintaining a dwelling house for the keeping or selling of a controlled substance (marijuana), and possessing with intent to use drug paraphernalia. Defendant was sentenced to thirty days in the custody of the Mecklenburg Sheriff for the misdemeanor paraphernalia charge, six to eight months in the custody of the Department of Corrections (DOC) for possession with intent to sell or deliver, six to eight months in the DOC's custody for felony possession, and six to eight months in the DOC's custody for maintaining a dwelling house for the keeping or selling of marijuana. The three prison sentences were imposed consecutively and suspended; defendant was placed on supervised probation for 108 months. Defendant now appeals.

On 6 June 2006, Officer Christopher Edward Lyon, a community officer with the Charlotte-Mecklenburg Police Department, received a call from the manager of the Arbor Glen Apartments, Jacqueline Brooker. Brooker asked Officer Lyon to meet her at defendant's apartment because Brooker had found drugs in it during a scheduled inspection. Brooker provided Officer Lyon with a photo showing a

bag of marijuana on a coffee table inside defendant's apartment. Officer Lyon called three other officers to secure the apartment while he obtained a search warrant.

As this was happening, defendant's boyfriend, Tavarus Greer, called defendant and told her that the police were at the apartment; at the time, defendant was being driven home from work by a co-worker, Chantike Carothers. Greer had a key to defendant's apartment and would often stay there during the day playing video games. Carothers, who was Greer's cousin, testified that Greer frequently sold marijuana, although defendant had told him not to keep his drugs at her apartment. Soon after defendant arrived at her apartment, Greer, driving defendant's car, returned to the scene. Officer P.B. Rainwater told defendant that she could not enter the apartment because it was under investigation. Officer Rainwater allowed her to sit in her apartment once she signed a consent to search form. Defendant told Officer Rainwater that she did smoke marijuana for her own use, but that she always had less than $20.00 worth.

Officers proceeded to search the apartment and found a bag of marijuana on the coffee table, a digital scale and thirteen bags of marijuana in the kitchen, and two more bags of marijuana in the bedroom; the total weight of the marijuana was approximately 371 grams. Greer was present when Officer Rainwater questioned defendant about the drugs. Defendant admitted to Officer Rainwater that the drugs and scale were hers; however, she testified at trial that the drugs and scale were actually not hers, and that she had lied to Officer Rainwater because she was afraid of Greer, whom she said had "anger problems" and had previously hit her and threatened, "Go ahead, just point your finger at me." Just before the officers searched the apartment, Greer told defendant that he had hidden a gun under her couch, and defendant disclosed this information to Officer Rainwater, who retrieved the gun.

At trial, the defense's principal theory was that defendant did not have possession of the drugs or scale because Greer had brought them into defendant's apartment while she was at work that day. Defendant and Carothers testified that Greer had a key to the apartment, was frequently at the apartment during the day, and was well known to sell marijuana.

[1] Defendant first argues that the trial court erred by improperly expressing an opinion that tended to discredit defendant's defense theory. We agree.

Near the beginning of defendant's testimony, she was questioned about Greer and how frequently he went over to her apartment. The relevant portion of the transcript reads:

Q: During that time, was [Greer] working?

A: Yes.

Q: And how often would you say that was?

A: Not that often because he knew that he could not be there, so he didn't stay there that much.

THE STATE: Objection. Your Honor. Where he was or was not has nothing to do with this charge.

THE COURT: Sustained. Let's move on to something else.

Q: Are you aware though of him staying . . .

THE COURT: Let's move on to another area. He has no involvement with these charges.

Defendant contends that the trial court's comment that Greer had "no involvement with these charges" tended to discredit the defense's theory to the jury by demonstrating that the trial judge did not believe that Greer was involved with the marijuana and scale, and, thus, that the contraband could not have been possessed by anyone but defendant.

A "judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2007). The rationale behind this rule is that "[i]t is generally recognized that a trial judge wields a strong influence over the trial jury. The trial judge occupies an exalted station. Jurors entertain great respect for his opinion, and are easily influenced by any suggestion coming from him." *State v. McEachern*, 283 N.C. 57, 61, 194 S.E.2d 787, 790 (1973) (quotations and citations omitted).

"In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *State v. Fleming*, 350 N.C. 109, 126, 512 S.E.2d 720, 732 (1999) (quotations and citations omitted). Although "[t]he trial court has a duty to control the examination of witnesses," the trial court cannot, while carrying out this duty, "express any opinion as to the weight to be given to or credibility of any competent evidence presented before

the jury." *Id.* at 126, 512 S.E.2d at 732-33 (quotations and citations omitted). "Whether the judge's language amounts to an expression of opinion is determined by its probable meaning to the jury, not by the judge's motive. Ordinarily, such expression of opinion cannot be cured by instructing the jury to disregard it." *McEachern*, 283 N.C. at 60-60, 194 S.E.2d at 789.

In *State v. Oakley*, a couple whose house had been burglarized testified that they had pointed a law enforcement officer towards tracks in fresh snow leading away from their home. 210 N.C. 206, 208, 186 S.E.2d 244, 145 (1936). During the trial, the presiding judge told the officer that he could not testify at that point as to who made the tracks. However, the trial judge soon asked the officer, "You tracked the defendant to whose house?" *Id.* The trial judge immediately followed his question by clarifying, "I didn't mean to say the defendant." *Id.* Nevertheless, our Supreme Court held that the question amounted to an opinion that the defendant had been the one who left the tracks in the snow. Despite the trial judge's attempt to rectify his statement, once "the damage is once done, it cannot be repaired, because, as we know, the baneful impression on the minds of the jury remains there still . . . . One word of untimely rebuke of his witness" may so cripple a party as to leave him utterly helpless before the jury." *Id.* at 210, 186 S.E.2d at 246 (quotations and citations omitted).

In contrast, in *State v. Cureton*, the Supreme Court held that a potentially damaging statement by a trial judge was not an opinion because of the circumstances in which it was made. 215 N.C. 778, 780-81, 3 S.E.2d 343, 345 (1939), *overruled on other grounds by State v. Williams*, 279 N.C. 663, 185 S.E.2d 174 (1971). In *Cureton*, a witness first testified that the defendant had shot the victim four times, but then later testified that the defendant shot the deceased an additional time. *Cureton*, 215 N.C. at 780, 3 S.E.2d at 345. At that point, the trial judge asked the witness, "When did he (defendant) shoot him (deceased) the last time[?]" *Id.* (alterations in original). On appeal, our Supreme Court held that the trial judge was merely seeking a clarification of the witness's statement, not stating his opinion. *Id.* As such, there was no error. *Id.*

In *McEachern*, before the prosecution's witness offered any testimony that she had been raped, the trial judge asked her, "Let me ask you a question of clarification before you go further, you were in the car when you were raped?" 283 N.C. at 59, 194 S.E.2d at 789. Our Supreme Court held that the question "although clearly inadvertent, assumed that defendant had raped" the victim. *Id.* at 62, 194 S.E.2d at

790. Accordingly, the defendant was entitled to a new trial. *Id.* at 69, 194 S.E.2d at 795. The court in *McEachern* distinguished *Oakley* from *Cureton* as follows:

> In *Oakley* the court's question expressed an opinion that the tracks were made by defendant. This crucial proof had not been shown by other evidence. In *Cureton* the fact that defendant had shot the deceased was supported by ample evidence, and the judge's question only sought clarification as to when and where the shooting took place. The defendant did not deny that he shot the deceased and in fact later testified that he fired the fatal shots, but that he did so in self defense.

*Id.* at 61, 194 S.E.2d at 790.

We believe that the facts of the present case are more akin to *Oakley* and *McEachern* than *Cureton*. The trial judge's statement that Greer "has no involvement with these charges" did not clarify any witness's comment nor seek further testimony. It was also not a statement clearly supported by previously admitted testimony or evidence. A reasonable interpretation of the statement is that Greer was not involved in defendant's purported possession of the drugs and scale; this topic was of utmost importance to defendant's defense. Although the trial judge likely did not intend his statement to have such a meaning, we look only at the statement's probable effect on the jury, not the intent of the judge. Defendant based her entire defense on showing that Greer had brought the drugs into defendant's apartment while she was at work. Because Carothers had already corroborated defendant's testimony that Greer had easy access to the apartment and that he frequently sold marijuana, the trial judge's comments could have discredited Carothers's testimony as well as defendant's, effectively rendering the defense's theory invalid or unbelievable. In addition, the trial judge's statement occurred near the beginning of defendant's testimony and may have discredited the remainder of defendant's testimony in the eyes of the jury.

Here, the statement rose to the level of an impermissible opinion that Greer was not involved with the possession of the drugs or scales. Whether Greer was involved with the drugs and scales, and to what degree, were factual questions for the jury to decide. Although surely unintentional, the trial judge's statement suggested that he had already assessed the credibility of defendant's evidence and found it lacking.

Although "not every improper remark will require a new trial, a new trial may be awarded if the remarks go to the heart of the case." *State v. Sidbury*, 64 N.C. App. 177, 179, 306 S.E.2d 844, 845 (1983). Here, the improper remark went to the heart of the defense by impugning the credibility of defendant and Caruthers. Accordingly, the error was prejudicial and requires a new trial. *See McEachern* at 69, 194 S.E.2d at 795.

[2] As such, we need not address defendant's other assignments of error with the exception of one that has a likelihood of recurring: Defendant argues that she was subjected to double punishment when she was convicted of both felony possession of marijuana and felony possession with intent to sell or deliver marijuana. "Multiple punishment is one facet of the prohibition against double jeopardy." *State v. McGill*, 296 N.C. 564, 568, 251 S.E.2d 616, 619 (1979). However, our Supreme Court has held that convictions for possession of a controlled substance and possession of a controlled substance with intent to sell or deliver do not violate a defendant's rights. *State v. Pipkins*, 337 N.C. 431, 434, 446 S.E.2d 360, 363 (1994). In *Pipkins*, the defendant argued that he was subjected to double punishment when he was convicted of felony possession of cocaine and trafficking in cocaine by possession. *Id.* at 432, 446 S.E.2d at 361. The Court noted that the statute prohibiting possession of controlled substances "combats the perceived evil of individual possession of controlled substances," but that the statute prohibiting trafficking by possession "is intended to prevent the large-scale distribution of controlled substances to the public." *Id.* at 434, 446 S.E.2d at 363. As such, our Supreme Court concluded that "the legislature's intent was to proscribe and punish separately the offenses of felonious possession of cocaine and of trafficking in cocaine by possession." *Id.*

Although *Pipkins* involved drug trafficking by possession, rather than possession with intent to sell or deliver as in the case *sub judice*, *Pipkins* explicitly overruled *State v. Williams*, 98 N.C. App. 405, 390 S.E.2d 729 (1990), and *State v. Oliver*, 73 N.C. App. 118, 325 S.E.2d 682 (1985). 337 N.C. at 435, 446 S.E.2d at 363. In both *Williams* and *Oliver*, this Court had held that a defendant sentenced for felonious possession of cocaine and for possession with intent to sell or deliver the same cocaine was subjected to double punishment and, thus, the lesser charge must be arrested. *Williams*, 98 N.C. App. at 407, 390 S.E.2d at 730; *Oliver*, 73 N.C. App. at 122, 325 S.E.2d at 686. The defendants in *Williams* and *Oliver* were both charged with the same crimes as defendant in the present case: felonious possession of a

controlled substance and felonious possession of a controlled substance with intent to sell or deliver. By explicitly overruling *Williams* and *Oliver*, the Supreme Court clarified that a defendant is not subjected to double punishment if she is sentenced and convicted of both possession of a controlled substance and possession of a controlled substance with intent to sell or deliver the same contraband. Therefore, defendant's right to be free from double punishment will not be impaired if, upon her new trial, she is convicted of felonious possession of marijuana and felonious possession of marijuana with intent to sell or deliver on retrial.

Vacated and remanded for new trial.

Judges BRYANT and CALABRIA concur.