DILLON, Judge.
Morris Leavett Stith ("Defendant") appeals from a judgment entered upon jury verdicts finding him guilty of (1) possession with intent to sell or deliver an opium derivative and (2) trafficking in an opium derivative by sale. For the following reasons, we find no error.
I. Background
On 21 November 2012, Defendant sold fifteen (15) pills containing a controlled substance (hydrocodone ) combined with a non-controlled substance (acetaminophen ) to a confidential police informant for $75.
*42 Defendant was subsequently indicted by a Johnston County grand jury with (1) possession with intent to sell or deliver a Schedule II controlled substance and (2) trafficking in an opium derivative by sale. The matter came on for a two-day trial in superior court.
The jury found Defendant guilty of (1) possession with intent to sell or deliver a Schedule III (as opposed to a Schedule II) controlled substance and (2) trafficking in an opium derivative by sale. Defendant stipulated to his status as an habitual felon. The trial court consolidated the charges for judgment, sentencing Defendant to prison for ninety (90) to 120 months based on certain mitigating factors. Defendant entered notice of appeal in open court.
II. Analysis
Defendant makes a number of arguments that the judgments should be vacated based on his contentions that the drug was misidentified in the indictments and that the trial court erred in allowing the prosecutor to amend the indictments. We address each conviction in turn.
A. Possession of Controlled Substance with Intent to Sell or Deliver
1. The Indictment
The original indictment returned by the grand jury charged Defendant the possession of the controlled substance "hydrocodone" (combined with a non-narcotic, acetaminophen) and stated that this substance was a Schedule II drug. Specifically, the indictment stated, in relevant part, as follows:
Offense: Possession of a SCH II CS [Schedule II Controlled Substance] with Intent to Sell or Deliver
... Defendant ... did [feloniously] possess acetaminophen and hydrocodone bitartrate [.] Acetaminophen and hydrocodone bitartrate [ ] is a controlled substance which is included in Schedule II of the North Carolina Controlled Substance Act [.]
2. The Amendment to the Indictment and the Evidence at Trial
Hydrocodone is a drug listed in Schedule II, the possession of which (with the intent to sell or deliver) is a Class H felony. N.C. Gen.Stat. §§ 90-90(1)(a)(10), 90-95(b)(1) (2012). However, by the start of the trial, it became apparent to the State that its evidence would show that the hydrocodone possessed by Defendant was combined with a non-narcotic such that the hydrocodone is considered under our law to be a Schedule III controlled substance, the possession of which (with the intent to sell or deliver) is only a Class I felony. Id. §§ 90-91(d)(3)-(5), 90-95(b)(2). Accordingly, the State made a request that it be allowed to strike through the phrase "Schedule II of" in the indictment, which the trial court granted.
During the trial, the State's evidence tended to show that Defendant possessed pills containing hydrocodone bitartrate[1] combined with acetaminophen, but that the pills were of such weight and combination to bring the hydrocodone within Schedule III. Defendant was convicted of possessing Schedule III hydrocodone with the intent to sell or deliver, a Class I felony.
3. Holding
We hold that the original indictment, as returned by the grand jury, was sufficient to charge the crime of possessing hydrocodone, a Schedule II controlled substance (and noting that the hydrocodone was combined with the non-narcotic, acetaminophen ). We hold that the indictment was sufficient to allow the jury to convict Defendant of possessing hydrocodone under Schedule III, based on its determination that the hydrocodone pills were under a certain weight and combined with acetaminophen within a certain ratio to bring it within Schedule III. That is, the jury did not convict Defendant of possessing an entirely different controlled substance than that which the grand jury had found Defendant to have possessed when it returned the original indictment. Finally, we hold that the strikethrough of the words "Schedule II of" from the indictment allowed at the start of trial was not reversible error *43 and was not otherwise prejudicial to Defendant.
It is true that amending an indictment is statutorily prohibited. See N.C. Gen.Stat. § 15A-923(e) (2014). However, our Supreme Court has held that not all change to an indictment is error. Specifically, the Court interpreted the term "amendment" in the statute to mean "any change in the indictment which would substantially alter the charge set forth in the indictment." State v. Price, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984). Therefore, as our Court has held, while "amending an indictment to add an essential element to the allegations contained therein constitutes a substantial alteration[,] ... an amendment that simply corrects an error unconnected and extraneous to the allegations of the essential elements ... is not[.]" State v. Williams, ---N.C.App. ----, ----, 774 S.E.2d 880, 883 (2015).
It is true that the identity of the controlled substance is an essential element of the crime of possession of a controlled substance with the intent to sell or deliver. State v. Board, 296 N.C. 652, 657, 252 S.E.2d 803, 806 (1979). However, as our Supreme Court has observed, the controlled substance need not be identified by the identical language used in the statute, but rather, the controlled substance may be identified "by whatever official name, common or usual name, chemical name, or trade name[.]"[2] Id. at 658, 252 S.E.2d at 807. See also State v. Sullivan, ---N.C.App. ----, ----, 775 S.E.2d 23, 27 (2015) (holding that an indictment was fatal because the name employed to identify the controlled substance was not the name used in the statute nor was there evidence that the name was the trade name); State v. Newton, 21 N.C.App. 384, 386, 204 S.E.2d 724, 725 (1974) (holding that indictment was sufficient where the controlled substance was identified by its trade name rather than by the name used in the statutory language).
In the present case, the original indictment identified the controlled substance possessed by Defendant as hydrocodone, and the jury ultimately convicted Defendant of possessing hydrocodone. The "change" in the indictment did not change the identity of the controlled substance. It only eliminated one of the two references to Schedule II. (Even with the strikethrough, the face of the indictment still contained a reference to Schedule II in its heading, identifying the offense charged as "Possession of SCH II CS [Schedule II controlled substance] with Intent to Sell or Deliver.") In any case, even changing "Schedule II" to "Schedule III" would not have changed the identity of the controlled substance (hydrocodone ) combined with acetaminophen in this case, but rather it would have merely changed the maximum weight of hydrocodone and ratio of hydrocodone with acetaminophen in each pill such that each pill would be considered a Schedule III drug.
4. Schedule II Hydrocodone vs. Schedule III Hydrocodone
The State's expert described the pills possessed by Defendant as Schedule III hydrocodone. Some clarification is necessary since "hydrocodone" is referred to by its synonym "dihydrocodeinone" in Schedule III of our statutes, which is provided below:
"Hydrocodone " is a controlled substance and is listed on Schedule II. N.C. Gen.Stat. § 90-90(1)(a)(10) (2012). However, hydrocodone can also be a Schedule III substance when it is at or below a certain dosage weight and combined within a certain ratio with a "nonnarcotic ingredient, " such as acetaminophen. Id. § 90-91(d)(4). In other words, hydrocodone, whether by itself or combined with a non-narcotic, is a Schedule II drug unless it is below a certain amount and combined within a certain ratio with the non-narcotic, in which case it is considered a Schedule III drug, the possession of which carries a lighter punishment.
In Schedule III, "hydrocodone " is actually referred to by its synonym "dihydrocodeinone." See id. Our Court has observed that, as discussed above, Schedule III hydrocodone (or dihydrocodeinone) is differentiated from Schedule II hydrocodone "by the quantitative *44 ratio of dihydrocodeinone to nonnarcotic ingredients [such as acetaminophen ] per dosage unit. " State v. Johnson, 214 N.C.App. 436, 441, 714 S.E.2d 502, 506 (2011) (emphasis in original). Our Supreme Court has referred to "dihydrocodeinone" as "dihydrocodeinone (hydrocodone)." State v. Ward, 364 N.C. 133, 138 n. 2, 694 S.E.2d 738, 741 n. 2 (2010). Other jurisdictions also recognize that hydrocodone and "dihydrocodeinone" are the same controlled substance. See State v. Benedict, 887 So.2d 649, 651 (2004) (observing that the substances are equivalent under Louisiana law); N.Y. CLS Pub. Health § 3306 (2015) (referring to hydrocodone as "hydrocodone (also known as dihydrocodeinone)" under Schedule II of New York's controlled substances law); State v. Pewitte, 2014 WL 1233030, *5, n. 3, 2014 Tenn.Crim.App. LEXIS 261, *14, n. 3 (2014) (unpublished opinion) (noting the use of "hydrocodone" and "dihydrocodeinone" interchangeably); State v. Pagan, 2011 WL 204876, *2 n. 3, 2011 Wash.App. LEXIS 88, *6 n. 3 (2011) (unpublished opinion) (explaining that "hydrocodone" and "dihydrocodeinone" are synonyms, citing a number of medical sources); United States v. McKinney, 2009 U.S. Dist. LEXIS 35825, *13 (2009) (unpublished opinion) (citing 21 C.F.R. § 1308.13(e)(1)(iii)-(iv) ).
Likewise, the term "dihydrocodeinone" does not appear in Schedule II, but is referred to by its synonym "hydrocodone," but "dihydrocodeinone" is not to be confused with an entirely different Schedule II controlled substance, "dihydrocodeine" referenced in N.C. Gen.Stat. § 90-90(2)(f).
5. This Case is Distinguishable from Recent Cases Cited by Defendant
Defendant argues that we are compelled to find that the indictment was insufficient to convict him of possessing Schedule III hydrocodone, citing a number of cases. See, e.g., State v. Ahmadi-Turshizi, 175 N.C.App. 783, 784-85, 625 S.E.2d 604, 605 (2006) ("When a defendant has been charged with possession of a controlled substance, the identity of the controlled substance that defendant allegedly possessed is considered to be an essential element which must be alleged properly in the indictment."). Indeed, our Court has required that controlled substances be identified with precision, noting that "the legal definition of these [controlled] substance[s] is itself technical and requires precision." State v. Ledwell, 171 N.C.App. 328, 332, 614 S.E.2d 412, 415 (2005). However, we hold that the present case is distinguishable.
In Ledwell, a 2005 case, our Court held that an indictment identifying the drug as "Methylenedioxyamphetamine (MDA)" was fatal because this term did not refer to the same substance as the controlled substance listed in our statutes as "3,4 -Methylenedioxyamphetamine (MDA)." Id. at 331-33, 614 S.E.2d at 414-15. The next year, our Court relied on Ledwell to reach an identical holding. Ahmadi-Turshizi, 175 N.C.App. at 786, 625 S.E.2d at 605-06. These cases were based on the fact that MDA is not identical to 3,4-methylenedioxyamphetamine. See Board, 296 N.C. at 657-58, 252 S.E.2d at 806-07.
In 2010, our Court held that an indictment identifying the controlled substance as "Benzodiazepines, which is included in Schedule IV" was defective because "benzodiazepines" is not found in Schedule IV but refers to a category of drugs, some of which are named in Schedule IV. State v. LePage, 204 N.C.App. 37, 54, 693 S.E.2d 157, 168 (2010). The actual drug at issue was clonazepam, which is a Schedule IV drug. N.C. Gen.Stat. § 90-92(a)(1)(i) (2012). The LePage Court based its holding on the fact that "benzodiazepines," (the term used in the indictment) is not the same controlled substance as "clonazepam " (the drug actually possessed), but rather clonazepam is a particular controlled substance within the benzodiazepines category of controlled substances. 204 N.C.App. at 54, 693 S.E.2d at 168. Accordingly, based on LePage, our Court is compelled to conclude that a drafter of an indictment has failed to use sufficient technical precision by identifying clonazepam as "benzodiazepines, a Schedule IV drug." See id.
In 2015, our Court held that the trial court erred by allowing the State to amend an indictment by adding the prefix "4-" to the word "methylethcathinone." Williams, --- N.C.App. at ----, 774 S.E.2d at 885-87. The Court essentially held that adding the numeric *45 prefix changed the identity of the controlled substance and therefore "added an essential element [to the indictment] that was previously absent, [ ] constitut[ing] a substantial alteration[.]" Id. at ----, 774 S.E.2d at 885-86.
However, unlike the above cases, in the present case the indictment was not changed such that the identity of the controlled substance was changed. Rather, it was changed to reflect that the controlled substance was below a certain weight and mixed with a non-narcotic (the identify of which was also contained in the indictment) to lower the punishment from a Class H felony to a Class I felony. The grand jury returning the indictment and the jury convicting Defendant both concluded that the controlled substance possessed by Defendant was hydrocodone.
Moreover, we believe that the indictment adequately apprised Defendant of the controlled substance that he possessed, hydrocodone. The indictment also alleged that the hydrocodone was combined with acetaminophen. The fact that the evidence at trial showed that the ratio of hydrocodone to acetaminophen and the weight of hydrocodone contained in each pill was sufficient to bring it within Schedule III did not render the indictment invalid, nor does it create a fatal variance.[3] Further, the amendment allowed by the trial court was not material because the strikethrough of certain language did not alter the identity of the controlled substance which Defendant was alleged to have possessed; and, in any case, even with the strikethrough, the face of the indictment still charged Defendant with possessing Schedule II hydrocodone.
Though not controlling, we find the case Graham v. State of Mississippi, 935 So.2d 1119 (2006), persuasive. In that case, the Mississippi intermediate appellate court held that an amendment to an indictment for the sale of hydrocodone which changed the Schedule from "II" to "III" did not prejudice the defendant. Id. at 1121-22. The Court specifically distinguished the case from another Mississippi opinion finding the omission of the numeric prefix from a drug name (similar to the omission which rendered the indictments fatal in Ledwell and Ahmadi-Turshizi ) to be fatal. Id. at 1121. See also State v. Toddy, 2000 WL 1804340, *1, 2000 Ohio App. LEXIS 5736, *10-11 (2000) (unpublished opinion) (allowing amendment of indictment for trafficking in hydrocodone by changing Schedule III to Schedule II).
B. Trafficking in an Opium Derivative
Defendant was also indicted for trafficking an opium derivative, for selling the hydrocodone pills. The indictment identifies the controlled substance using the same language as the language used in the indictment charging Defendant with possession with the intent to sell.
On appeal, Defendant makes the same arguments concerning the change to the indictment allowed by the trial court (namely, striking the words "Schedule II of" as was allowed with the other indictment). For the same reasons, we hold that the actions of the trial court did not constitute reversible error. Further, we hold that there was no fatal variance between the indictment and the evidence at trial. The indictment alleged that Defendant was trafficking in hydrocodone, and the evidence tended to show that Defendant was trafficking in hydrocodone. Accordingly, this argument is overruled.
NO ERROR.
Judge GEER concurs.
Judge HUNTER, JR., dissents by separate opinion.

As stated in Defendant's brief, the term "bitartrate" in the indictment does not refer to any controlled substance but merely modifies "hydrocodone" as being in a certain salt form.

This quoted language is the same language used in each of the statutes which identifies the schedules of controlled substances. Compare N.C. Gen.Stat. § 90-90 with id. § 90-89.

The present situation is similar to a situation where a defendant is indicted with felonious larceny of certain tools valued at over $1,000 (a felony because the value of the tools is over $1,000). See N.C. Gen.Stat. § 14-72(a) (2012). There is no fatal variance merely because the jury determines that the value of the tools was under $1,000 and convicts the defendant of a misdemeanor. See State v. Jones, 275 N.C. 432, 437-38, 168 S.E.2d 380, 384 (1969).