IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-310

No. COA20-9

Filed 6 July 2021

Brunswick County, Nos. 18CRS2453, 18CRS51073-75

STATE OF NORTH CAROLINA

v.

CHERELLE RENEE HILLS, Defendant.

Appeal by Defendant from judgments entered 19 February 2019 by Judge Ronald L. Stephens in Superior Court, Brunswick County. Heard in the Court of Appeals 25 August 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Barry H. Bloch, for the State.*

*W. Michael Spivey, for Defendant-Appellant.*

STROUD, Chief Judge.

¶ 1        Cherelle Renee Hills ("Defendant") appeals from a judgment entered upon jury verdicts finding her guilty of possession with intent to manufacture, sell, and deliver a Schedule I controlled substance, synthetic cannabinoid; possession with intent to sell and deliver a Schedule III controlled substance, Buprenorphine; possession with intent to sell and deliver heroin; three counts of trafficking heroin of 14 grams or more but less than 28 grams (by possession, by transportation, and by manufacturing); and

possession with intent to manufacture, sell, and deliver cocaine. Defendant argues that the trial court expressed an impermissible opinion; the indictment in 18 CRS 2453 was facially invalid; and the trial court erred by denying her motion to dismiss. We hold that the trial court did not express an impermissible opinion that would warrant a new trial. However, because the indictment 18 CRS 2453 did not set forth the essential elements of the crime charged, we vacate Defendant's conviction for possession with intent to manufacture, sell, and deliver a Schedule I controlled substance, synthetic cannabinoid.

## I. Background

¶ 2     The State's evidence tended to show that in February of 2018, after being arrested and charged with numerous drug offenses, Desaraa Giano ("Ms. Giano") agreed to work as an informant for narcotics agents within the Brunswick County Sheriff's Office. Ms. Giano informed officers that Defendant, from whom she had purchased heroin in New Jersey three times, planned to bring forty "clips"[1] of heroin to North Carolina to sell. Ms. Giano testified that she had worked with Defendant in a group home in New Jersey, and Defendant was listed in her phone as "Relly Hills."

¶ 3     On 8 March 2018, Ms. Giano was instructed to call the number listed in her phone for "Relly;" however, due to "technical difficulties" from Ms. Giano's handling

---

[1] In her testimony, Ms. Giano explained that a "brick" or a "clip" is made up of 50 "bindles" or "bags" of heroin. Each "bindle" or "bag" usually consists of one dose of heroin.

of the recording device, the recording of the person Ms. Giano spoke to was not clear. Agent Samuel Britt of the Brunswick County Sheriff's Department, who was present when Ms. Giano made the call, testified that he could hear a woman's voice on the other end of the line, that Ms. Giano referred to that person as "Cherelle," Cherelle "stated that she was bringing her bros and the kids with her on the trip to North Carolina[,]" and Cherelle planned to bring 40 "bricks" of heroin to North Carolina. After the FBI confirmed that the phone number Ms. Giano used belonged to Cherrelle Hills, Agent Britt received a "tracking order" for Defendant's phone.

¶ 4 On 9 March 2018, officers tracked the location of Defendant's phone as it moved from New Jersey to North Carolina. Throughout 9 March into the early hours of 10 March, Ms. Giano communicated with Defendant via text message about the transportation of the drugs, and Ms. Giano forwarded the text messages to Agent Britt. Officers ultimately tracked the location of the phone to a burgundy Dodge van in the parking lot of a store in Wayne County and then followed the van.

¶ 5 At approximately 2:00 A.M. on 10 March 2018, officers initiated a traffic stop and pulled the van over for speeding. The van had three rows of seats: Defendant was in the driver's seat; Jerry Colvin was in the passenger's seat; Kenneth Norman was in the second row behind Defendant; and two children were in the third row. After K-9 officers alerted to the presence of narcotics, a search of a compartment under the floor board of the second row of seats revealed Tasty Cake boxes, Swiss

Cake Rolls boxes, and a cell phone box—all containing controlled substances. The three adults were arrested, and the children were placed in the custody of the Department of Social Services. Chemical analysis identified the controlled substances found in the van as 24.3 grams of heroin, less than .1 gram of cocaine, fourteen strips of Buprenorphine, and .33 grams of synthetic cannabinoid.[2] The State's expert witness, a forensic scientist in the Drug Chemistry Section at the North Carolina State Crime Lab, testified that the green leafy material discovered in the van was "a synthetic cannabinoid called 540 ADD."

¶ 6     Defendant testified that her nickname was Relly and that she rented the van to drive to "South of the Border" in South Carolina to purchase cigarettes and fireworks to resell in New Jersey. Defendant denied texting with Ms. Giano during the drive; she testified that Jerry Colvin was sending text messages from her phone. Defendant denied making any arrangements with Ms. Giano to sell her drugs.

¶ 7     The case came on for trial on 21 January 2019 and 19 February 2019 in Superior Court, Brunswick County. The jury returned verdicts finding Defendant guilty of possession with intent to manufacture, sell, and deliver a Schedule I controlled substance synthetic cannabinoid; possession with intent to sell and deliver

---

[2] The State's expert witness explained that a cannabinoid "is what gives the plant material its – the effect of being high," so a synthetic cannabinoid "is one that is man-made, not natural, and it's usually sprayed on non-controlled plant material."

a Schedule III controlled substance, Buprenorphine; possession with intent to sell and deliver heroin; 3 counts of trafficking heroin of 14 grams or more but less than 28 grams (by possession, by transportation, and by manufacturing); and possession with intent to manufacture, sell, and deliver cocaine. The trial court consolidated the convictions for judgment into Counts II and III of 18 CRS 51074 and imposed fines of $100,000 in each case. The trial court also imposed consecutive sentences of imprisonment for a minimum of 90 months and a maximum of 117 months.[3]

## II.    Petition for Writ of Certiorari

¶ 8        Defendant filed a petition for writ of certiorari on 3 February 2020 acknowledging that "[t]he record is clear that [Defendant] wanted to give notice of appeal but her trial counsel failed to do so." Under Rule 21, a "writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action . . . ." N.C. R. App. P. 21(a)(1). In our discretion, we allow Defendant's petition.

## III.    Impermissible Opinion

¶ 9        Defendant argues that "the trial court expressed an impermissible opinion when it instructed the jury to disregard evidence related to involvement of others in

---

[3] The trial court subsequently entered amended judgments to correct a clerical error; however, the minimum and maximum terms of confinement remained the same.

the offenses with which [Defendant] was charged." (Original in all caps.) The State contends that Defendant's failure to object to the trial court's statement limits this Court's review to plain error. *See* N.C. R. App. P. 10(b)(2). However, it is well established that a "defendant's failure to object to alleged expressions of opinion by the trial court in violation of [N.C. Gen. Stat. § 15A-1222 and N.C. Gen. Stat. § 15A-1232] does not preclude his raising the issue on appeal." *State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989) (citations omitted); *see also State v. Austin*, ___ N.C. App. ___, ___, 849 S.E.2d 307, 310 (2020). Therefore, Defendant's argument is preserved as a matter of law.

¶ 10    The prohibition on a trial court's expression of opinion is codified in North Carolina General Statutes § 15A-1222 and § 15A-1232. North Carolina General Statute § 15A-1222 provides that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2019). Similarly, North Carolina General Statute § 15A-1232 states, "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved[.]" N.C. Gen. Stat. § 15A-1232 (2019). "Whether the judge's language amounts to an expression of opinion is determined by its probable meaning to the jury, not by the judge's motive." *State v. McEachern*, 283 N.C. 57, 59–60, 194 S.E.2d 787, 789 (1973) (citations omitted). This Court has explained, "[t]he slightest intimation from the trial judge as to the weight

or credibility to be given evidentiary matters will always have great weight with the jury, and great care must be exercised to [e]nsure that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial." *State v. Grogan*, 40 N.C. App. 371, 374, 253 S.E.2d 20, 22 (1979) (citation omitted).

¶ 11 We review the totality of the circumstances "[i]n evaluating whether a judge's comments cross into the realm of impermissible opinion," *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995) (citation omitted), as "[t]here must be no indication of the judge's opinion upon the facts, to the hurt of either party, either directly or indirectly, by words or conduct," *State v. Benton*, 226 N.C. 745, 749, 40 S.E.2d 617, 619 (1946) (citation and quotation marks omitted). "Additionally, the timing of the remarks must be considered." *State v. Foye*, 220 N.C. App. 37, 47, 725 S.E.2d 73, 81 (2012) (citation omitted). However, "[a] remark by the court is not grounds for a new trial if, when considered in the light of the circumstances under which it was made, it could not have prejudiced [the] defendant's case. The burden rests on the defendant to show that the trial court's remarks were prejudicial." *State v. Anderson*, 350 N.C. 152, 179, 513 S.E.2d 296, 312 (1999) (citations and quotation marks omitted).

¶ 12 Here, after instructing the jury on each relevant charge, the trial court stated:

Let me just mention also that the fact that other people

> were charged during the course of this investigation. Anyone else charged with this or involved with this will have their day in court. Your focus today is on that evidence against this defendant, and the State has the burden of proof of guilt beyond a reasonable doubt based on the evidence that has been presented during the course of this trial as to her. You should not be distracted or influenced by the fact that someone else may be charged or what may or may not happen in their cases. Again that's your focus and will not be a focus for you to – or it should not influence you in any way in your decision making progress.

Defendant argues that the challenged instruction could be reasonably interpreted by the jury to convey three impermissible opinions: (1) "the instruction opines that 'this,' meaning the crimes charged, occurred and that the others 'charged' or 'involved' in 'this' will have their day in court"; (2) "the instruction expresses the court's opinion that *all evidence* related to anyone else being responsible for putting the drugs in the van is not credible and the jury should not let it influence its verdict 'in any way'"; and (3) "the instruction characterizes [Defendant's] defense as, in the court's opinion, a distraction that should be ignored." (Emphasis in original.)

¶ 13     First, the trial court did not express an *opinion* that the crimes for which Defendant was charged actually occurred. Defendant does not dispute that drugs were seized from a van she was driving on 10 March 2018. As stated in her brief, Defendant's "sole defense was that she did not know that any drugs were in the van and had nothing to do with the sale of any drugs[,]" and "[t]hus, the men traveling

with her must have been transporting the drugs without her knowledge." The disputed question of fact for the jury's determination was whether Defendant was guilty of the crimes charged, not whether the crimes occurred.

¶ 14       Second, the trial court did not express an opinion that all evidence related to the defense's theory that someone else was responsible for transporting the drugs was "not credible" and should be ignored. Read in context, the trial court's statement did not touch on Defendant's evidence; the instruction referred to the "evidence against this defendant," and the State's "burden of proof of guilt beyond a reasonable doubt based on the evidence that has been presented during the course of this trial as to her." The trial court's statement did not refer to the credibility of any evidence. Therefore, it is not probable that the jury inferred that the trial court's instruction regarding the State's evidence against Defendant expressed an opinion on the credibility of Defendant's evidence.

¶ 15       Third, the trial court's statement did not imply an opinion that Defendant's defense was a distraction that should be ignored. Defendant argues that in *State v. Springs*, 200 N.C. App. 288, 683 S.E.2d 432 (2009), "this Court held a much less egregious expression of opinion that the jury should ignore the defense that another person committed the crime to be an impermissible expression of opinion requiring a new trial." In *Springs*, after officers found marijuana and a digital scale at the defendant's apartment, the defendant admitted "that the drugs and scale were

hers[;]" however, at trial, the defendant testified that the drugs and scale actually

belonged to her boyfriend, Mr. Greer, and that she had only claimed ownership

"because she was afraid of Greer[.]" 200 N.C. App. at 290, 683 S.E.2d at 434. During

the defendant's testimony, the following exchange occurred:

> Q: During that time, was [Greer] working?
>
> A: Yes.
>
> Q: And how often would you say that was?
>
> A: Not that often because he knew that he could not be there, so he didn't stay there that much.
>
> THE STATE: Objection. Your Honor. Where he was or was not has nothing to do with this charge.
>
> THE COURT: Sustained. Let's move on to something else.
>
> Q: Are you aware though of him staying . . .
>
> THE COURT: Let[']s move on to another area. *He has no involvement with these charges.*

*Id.* at 291, 683 S.E.2d at 434 (alterations in original) (emphasis added). This Court

explained that "[a] reasonable interpretation of the statement is that Greer was not

involved in defendant's purported possession of the drugs and scale" so the statement

could have discredited both the defendant and a corroborating witnesses' testimony

that Greer "had easy access to the apartment and that he frequently sold marijuana .

. . , effectively rendering the defense's theory invalid or unbelievable." *Id.* at 293, 683

S.E.2d at 435–36. And because "the trial judge's statement occurred near the beginning of defendant's testimony[,]" it "may have discredited the remainder of defendant's testimony in the eyes of the jury." *Id.* at 293, 683 S.E.2d at 436. As a result, this Court held:

> [t]he statement rose to the level of an impermissible opinion that Greer was not involved with the possession of the drugs or scales. Whether Greer was involved with the drugs and scales, and to what degree, were factual questions for the jury to decide. Although surely unintentional, the trial judge's statement suggested that he had already assessed the credibility of defendant's evidence and found it lacking.

*Id.*

Here, the trial court did not affirmatively state that a certain person crucial to the defense's theory was not involved in the charges. To the contrary, the trial court instructed the jury that "[a]nyone else charged with this or involved with this will have their day in court." The trial court's instruction, therefore, did not reflect an opinion on the credibility of Defendant's evidence but, instead, reminded the jury it must only consider the evidence presented during the course of the hearing. Viewed in context, the instruction to "not be distracted or influenced by the fact that someone else may be charged or what may or may not happen in their cases" refers to the State's burden to prove beyond a reasonable doubt Defendant's guilt. Indeed, in the sentence preceding the challenged instruction, the trial court stated to the jury,

"[y]our focus today is on that evidence against this defendant, and the State has the burden of proof of guilt beyond a reasonable doubt based on the evidence that has been presented during the course of this trial as to her."

¶ 17        In contrast, in *Springs*, 200 N.C. App. 288, 683 S.E.2d 432, the trial court's statement during the defendant's testimony could be interpreted as the trial court's opinion on a disputed fact, whereas the challenged statement here was in the form of an instruction made to the jury after the close of the evidence.  The jury had heard all the evidence and had been instructed on all the charges.  The trial court had also specifically instructed the jury as follows:

> The law, as indeed it should, requires the presiding judge to be impartial and fair.  You're not to draw any inference from any ruling that I may have made or any inflection in my voice or any expression on my face or any question that I may have asked a witness or anything else that I may have done by saying anything to the lawyers or anything else that I have an opinion or that I have intimated an opinion as to whether any part of the evidence should be believed or disbelieved or as to whether any fact has or has not been proven or as to what your findings should be.

Thus, before making the statement in question, the trial court had specifically instructed the jury to not glean any indication of an opinion from the trial court's statements or actions.  Moreover, because the trial court's instruction to the jury occurred at the very end of the trial after the close of evidence, it could not have discredited any subsequent testimony.  Reviewing the totality of the circumstances,

we hold that the trial court did not express an impermissible opinion to the jury.

## IV.    Indictment

Defendant contends that "the indictment in 18 CRS 2453 [(the "Indictment")] is facially invalid because it did not identify a substance listed in the Controlled Substances Act." (Original in all caps.)  "The purpose of an indictment is to give a defendant notice of the crime for which he is being charged[.]" *State v. Bowen*, 139 N.C. App. 18, 24, 533 S.E.2d 248, 252 (2000).  "It is well settled that a felony conviction must be supported by a valid indictment which sets forth each essential element of the crime charged[,]" and this Court has held that "[i]dentity of a controlled substance allegedly possessed constitutes such an essential element." *State v. Sullivan*, 242 N.C. App. 230, 232, 775 S.E.2d 23, 26 (2015) (citations omitted); *see also State v. Stith*, 246 N.C. App. 714, 717, 787 S.E.2d 40, 43 (2016) ("It is true that *the identity of the controlled substance is an essential element of the crime of possession of a controlled substance* with the intent to sell or deliver."  (emphasis in the original (citation omitted))).  "An indictment is invalid where it fails to state some essential and necessary element of the offense of which the defendant is found guilty." *State v. Ledwell*, 171 N.C. App. 328, 331, 614 S.E.2d 412, 414 (2005) (citations and quotations omitted).

Here, the Indictment alleged that Defendant "possess[ed] with the intent to manufacture, sell and deliver"

> a controlled substance, namely Methyl(2S)-2-{{1-(5-fluoropentyl)-1H-indazol-3-yl]formamido}-3,3-dimethylbutanoate (5F-ADB), which is included in Schedule I of the North Carolina Controlled Substances Act.

¶ 20    The State's evidence at trial revealed that it had intended the Indictment charge Defendant with possession with the intent to manufacture, sell and deliver a synthetic cannabinoid. Schedule I of the Controlled Substances Act is contained in North Carolina General Statute § 90-89 and enumerates seven categories of controlled substances: opiates, opium derivatives, hallucinogenic substances, systemic depressants, stimulants, NBOMe compounds, and synthetic cannabinoids. N.C. Gen. Stat. § 90-89 (2019). North Carolina General Statute § 90-89(7) identifies 18 "examples of synthetic cannabinoids"; however, neither of the chemical names in the Indictment—"Methyl(2S)-2-{{1-(5-fluoropentyl)-1H-indazol-3-yl]formamido}-3,3-dimethylbutanoate" nor (5F-ADB)—is listed among them. N.C. Gen. Stat. § 90-89(7)(a)-(r). Although the Indictment alleged that the chemical formula charged was "included in Schedule I of the North Carolina Controlled Substances Act[,]" no such formula appears in *any* section of Schedule I of the North Carolina Controlled Substances Act. N.C. Gen. Stat. § 90-89. This Court has held when "the substance listed in [a] defendant's indictment does not appear in Schedule I of our Controlled Substances Act, the indictment is fatally flawed[.]" *State v. Turshizi*, 175 N.C. App. 783, 786, 625 S.E.2d 604, 606 (2006); *see also Ledwell*, 171 N.C. App. at 333, 614

S.E.2d at 415 (vacating the defendant's conviction for possession of "methylenedioxyamphetamine (MDA)" when "the substance listed in [the d]efendant's indictment d[id] not appear in Schedule I of the North Carolina Controlled Substances Act").

The State asserts that "no advanced knowledge of chemistry is needed to further identify and place 5F-ADB within the Controlled Substance Act as a synthetic cannabinoid" because "[a] simple on-line search 5F-ADB as an indazole-based synthetic cannabinoid used as an active ingredient in synthetic cannabis products." The State cites the website Wikipedia in support of this argument. North Carolina courts have never recognized Wikipedia as an authoritative source for any factual evidence or any legal argument, nor may this Court use Wikipedia to supplement the language of indictment. Wikipedia itself has a disclaimer which includes the following caveats regarding its reliability:

> Wikipedia is written collaboratively by largely anonymous volunteers who write without pay. Anyone with Internet access can write and make changes to Wikipedia articles, except in limited cases where editing is restricted to prevent further disruption or vandalism.
>
> . . .
>
> Wikipedia is a live collaboration differing from paper-based reference sources in important ways. It is continually created and updated, with articles on new events appearing within minutes, rather than months or years. Because everybody can help improve it, Wikipedia has

> become more comprehensive than any other encyclopedia. Besides quantity, its contributors work on improving quality, removing or repairing misinformation, and other errors. Over time, articles tend to become more comprehensive and balanced. However, because anyone can click "edit" at any time and add content, any article may contain undetected misinformation, errors, or vandalism. Readers who are aware of this can obtain valid information, avoid recently added misinformation [ ] and fix the article.

https://en.wikipedia.org/wiki/Wikipedia:About

The facial validity of an indictment "should be judged based solely upon the language of the criminal pleading in question without giving any consideration to the evidence that is ultimately offered in support of the accusation contained in that pleading." *State v. White*, 372 N.C. 248, 254, 827 S.E.2d 80, 84 (2019) (citation and quotation marks omitted). And "[a] court may not look to extrinsic evidence to supplement a missing or deficient allegation in an indictment." *Id.* at 254, 827 S.E.2d at 84 (citation omitted). The State's contention that "a simple on-line search" would have revealed what Defendant was being charged with appears to be a concession that the controlled substance was not identifiable within the four corners of the Indictment, *i.e.*, the Indictment did not set forth an essential element of the crime charged. Accordingly, the Indictment is fatally flawed, and we vacate Defendant's conviction in 18 CRS 2453. Because we vacate this conviction, we need not address Defendant's final assertion that the trial court erred in denying her motion to dismiss

this charge.

## V.    Conclusion

We hold that the trial court did not convey impermissible opinions on disputed facts to the jury.  As a result, no new trial is warranted.  However, because the Indictment did not set forth the essential elements of one of the crimes charged, we vacate Defendant's conviction in 18 CRS 2453 for possession with intent to manufacture, sell, and deliver a Schedule I controlled substance synthetic cannabinoid.

NO ERROR IN PART; VACATED IN PART.

Judges DIETZ and ZACHARY concur.